Maurice **HORNSTEIN** and Amalia Hornstein, Plaintiffs,

v.

**ATCHINSON, TOPEKA & SANTA FE RAILROAD**, a foreign corporation, Defendant.

Civ. No. 3627.

United States District Court
W. D. Wisconsin.

June 3, 1964.

———◆———

Douglas Nelson, Madison, Wis., for plaintiffs.

William J. P. Aberg, Aberg, Bell, Blake & Metzner, Madison, Wis., for defendant.

RABINOVITZ, Judge.

The matter before the Court is a motion to quash the return of the summons for the reason that the defendant is not amenable to process in Wisconsin because it is not doing business in this State, and for the further reason that service of the summons on defendant's agent, G. F. Mueller, was insufficient.

This is a personal injury action. The injury allegedly occurred while the plaintiffs were riding as paying passengers on defendant's railroad in Kansas. Plaintiffs purchased their tickets in Madison, Wisconsin. The accident occurred on August 13, 1960. Defendant is a Kansas corporation, having no tracks in Wisconsin; it carries neither freight nor passengers in Wisconsin. Defendant does maintain an office in Milwaukee for the purpose of soliciting freight and passenger business. Mr. G. F. Mueller is the agent in charge of the office. No contracts are executed in Wisconsin. It appears that the Milwaukee office of the defendant is solely for the purpose of soliciting business and maintaining good will.

An affidavit filed by Mueller states that he is subject to and operates under the jurisdiction and supervision of superior officers, located in Chicago, Illinois. He flatly denied that he was a managing agent within the meaning of section 262.06(5) (a), Wisconsin Statutes, as that term is therein used. A counter affidavit filed by Mr. Hornstein was not responsive to the question of managing agent. It was directed at the matter of doing business within this State.

The record is otherwise devoid of adequate information regarding the actual scope of Mueller's authority. At oral argument, there was some discussion to the effect that plaintiffs would conduct an adverse examination to determine more fully the actual authority of Mueller. To date this has not been done.

## DOING BUSINESS

██ Defendant is amenable to process in this State. In a diversity of citizenship case, such as this one, the court will look to the law of the state in which it is sitting to determine whether or not a foreign corporation is doing business in the state so as to be subject to the jurisdiction of the federal court. Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 199 F.2d 485 (7th Cir. 1952).

 Under Wisconsin law, the solicitation of business, especially where, as here, it is continuous, constitutes "doing business" for purposes of amenability to the jurisdiction of the court. Huck v. Chicago, St. P. M. & O. R. Co., 4 Wis.2d 132, 90 N.W.2d 154 (1958), and Lau v. Chicago & N. W. R. Co., 14 Wis. 2d 329, 111 N.W.2d 158 (1961).

The Huck and Lau cases, supra, involved injuries to Wisconsin plaintiffs which were sustained in Wisconsin. The fact that in the present case, there is a foreign cause of action ought not to defeat jurisdiction. Huck makes this clear when the Court there states: "We have no hesitancy in holding that the objective of the statute was to give citizens of Wisconsin the right to make use of the courts of this state in instituting causes of action against any foreign corporation, which actually is carrying on business activities within the state, subject only to such limitations as are imposed by the United States constitution." The statute referred to by the Wisconsin Supreme Court relates to grounds for jurisdiction, in that case, the doing of business.

The fact that this case involves a foreign cause of action is not a constitutional limitation upon the power of a state court to subject a foreign corporation to its jurisdiction. The Wisconsin court seems firmly committed to the proposition that a foreign corporation, which is

found to be doing business in Wisconsin, is amenable to process in a suit brought by a Wisconsin plaintiff having a foreign cause of action. Lau, supra, citing Perkins v. Benquet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Mitchell v. Airline Reservations, Inc., 265 Wis. 313, 61 N.W.2d 496 (1953), may be distinguished. The Court there held that "casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." Factually the situation is different. There, the corporation was not doing business in Wisconsin. The agent's sole purpose in being in Wisconsin was unrelated to the cause of action for which he was served. In the present case, the corporation is doing business in this state. Its agent is not here for isolated purposes. He is here to obtain business for the railroad. The Hornsteins' purchased their tickets, for use on defendant's railroad, in Madison, Wisconsin.

### SERVICE OF PROCESS

The question then remaining is in the application of Rule 4(d) (3) and Rule 4 (d) (7), Federal Rules of Civil Procedure. Rule 4(d) (3) provides for service of the summons upon a "managing or general agent" or "any other agent authorized by * * * law to receive service of process * * *." Rule 4(d) (7) in material part provides, "* * * *it is also sufficient* if the summons * * *" is served in conformity with the law of the state in which the court sits. (Emphasis added.)

The problem directly confronting this Court is whether or not it is restricted to the use of Rule 4(d) (7) in determining the sufficiency of the actual service of the summons, once it is found that there is a jurisdictional basis upon which a summons may be served, or may resort be had under Rule 4(d) (3) to test the sufficiency of the service.

This matter arises because the Court, on the present state of the record, does not believe that Mueller is a managing agent under Wisconsin law. The Wisconsin court has construed "managing agent" strictly, while at the same time it has been very liberal in its determination of doing business. A brief comment on the Wisconsin statutes is in order. By 1866, the Legislature enacted statutes permitting service of process against railroads by serving station, ticket or freight agents of railroads, whose general office was not in Wisconsin. In 1872, a provision was added permitting service on the person in charge of a sleeping car operated by the railroad in this State. In 1959, the Legislature enacted a complete revision of the Statutes pertaining to commencing civil actions. Eliminated was the provision for service on agents of railroad corporations. Service could only be had by serving, so far as material here, the managing agent of said domestic or foreign corporation. 1959 Laws, Ch. 226.

28 U.S.C.A. § 1652 provides that state laws shall be used as the rules of decision in cases where they apply. The Erie Doctrine, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) extended the scope of section 1652. The substantive law of a state, where applicable, must be adopted by the federal court. The court has no choice in the matter. However, the manner of service of process is governed by federal law, as set forth in Rule 4. It is this law which permits the alternative use of federal or state law. This Rule in effect is a "swing" law, permitting the plaintiff to follow the federal rule regarding service of the summons, or state law, whichever means of service best befits the circumstances. Several reported federal cases considering this means of service will be set forth below.

The great majority of reported cases considered by this Court have generally considered subsections (3) and (7) together, finding service effective under both state and federal law, or defective

under both state and federal law. Cases often holding that the court is bound by state law were either discussing the question of doing business, or were using state law because the case had been removed from a state court, or considered subsection (7) without reference to a possible different result obtainable under subsection (3). In fact, it seems that in these jurisdiction cases, the primary issue was the matter of amenability to process, counsel apparently being satisfied that if the defendant was amenable to process, there was sufficient service. The two leading Wisconsin cases, Huck and Lau, supra, demonstrate this point. In Huck, the question of managing agent was argued in the briefs of counsel, but at oral argument before the Wisconsin Supreme Court, it was indicated that this argument had been abandoned. The Lau case is silent on the question of the sufficiency of the service.

Rule 4(d) (7) extends the manner in which process may be served in the federal courts. Especially is this so where resort is had to state "long-arm" statutes, not available under subsection (d) (3). In such a case, the federal court must look to state law, subject only to review by the federal court in respect to whether the state method conforms to our notions of due process by providing adequate notice. Often, of course, this question becomes intertwined with the question of whether the particular foreign corporation is "present" or "doing business" within the state.

■ By a similar token, a district court must not be walled-in by limitations of state law, which is more restrictive than federal law. Where service of process is validly predicated under Rule (d) (3), it must not be defeated by showing that the alternative provisions of Rule 4, allowing process to be served in accordance with state law, indicate defective service. Where there is no need to use state law for service, that law may not be used to test the sufficiency of service.

Subsection (d) (3) permits service on an agent authorized by law to receive process. Federal law is used to determine whether the agent served comes within the meaning of the Rule. State law, not being invoked under subsection (d) (7), cannot define the agency question under subsection (d) (3).

Once it is established that a defendant may be served, it is clear that subsections (3) and (7) stand on independent footings; either section is available to plaintiff as his directions for the service of process. See for example, the Appendix to the dissenting opinion in Arrowsmith v. United Press International, 320 F.2d 219 (2nd Cir. 1963), written by Judge Clark. That case, of course, did not involve the questions here under consideration; the point was nevertheless made clear.

An example of the alternative use of the provisions of Rule 4, albeit in reversed posture, is found in Stanga v. McCormick Shipping Company, 268 F.2d 544 (5th Cir. 1959). In that case the court found that the person served was clearly "not a person described in F.R. Civ.P. 4(d) (3) * * *." The court then turned to the state law to determine the sufficiency of the service of process.

This is not a case where, unless service is properly had under the state procedure, no federal means of service is available. Where that is the situation, Rule 4(d) (7) and 28 U.S.C.A. § 1652 require determination according to state laws. Cleaves v. Funk, 76 F.2d 828 (10th Cir. 1935).

International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is cited primarily for its consideration of the matter of corporate presence. However, the sufficiency of the service was also considered. There, service was had on one of International Shoe's thirteen salesmen. Notice was also sent to the company's home office. The salesman served had limited powers. He was merely a solicitor, having no power to enter into contracts. All orders were sent to International Shoe officers located outside the State of Washington. The salesmen were under the control of sales managers, located in

.. 

St. Louis, Missouri, the principal place of business of International Shoe. The facts in that case and the matter before this Court appear to be not too dissimilar.

In respect to the sufficiency of the notice, the Court there said; "We are likewise unable to conclude that the service of the process within the state upon *an agent whose activities established the appellant's 'presence'* there is not sufficient notice of the suit, or that the suit was so unrelated to those activities as *to make the agent an inappropriate vehicle for communicating the notice.* It is enough that appellant has established such contacts with the state that the particular form of substituted service adopted there gives reasonable assurance that the notice will be actual." (Emphasis added.)

In American Football League v. National Football League, 27 F.R.D. 264 (D.Md.1961), service was had on the football coaches. The court said that service is deemed sufficient when the individual served stands in such a relation to his principal that it is "fair, reasonable and just to imply the authority on his part to receive service." The teams had challenged the sufficiency of the service on the ground that the coaches were not managing agents within the meaning of Rule 4(d) (3). In response the court said; "Moreover, each coach was in charge of the activities which rendered his employer amenable to suit in this district." Service was held valid.

In Den Heijher v. Erie Railroad Company, 171 F.Supp. 174 (S.D.N.Y.1959), an often cited case, service on one of the three station agents in the state was sufficient under state law and under Rule 4(d) (3). It is there said: " * * * the intent must be that, in any case where the operations of the corporation within the jurisdiction are sufficiently extensive to make it amenable to service there, delivery of the summons to the highest ranking person who is in charge of those operations and within the state will be effective." The agent in Den Heijher, as did Mueller in the case at bar, by affidavit, attempted to show his limited authority. In Den Heijher, the agent's

affidavit was squarely controverted by plaintiff, who denied that the agent was not in charge of the business within the state. The court held that the agent's denials did not rebut the statement that the agent was in charge of the business. " * * * there is no need for a special agent superintendent for the operation of the small part of the mileage which lies in New York. * * * Whether Angyal was the only station agent in New York or one of three of equal rank, I think that, on the record, he was a managing or general agent."

See also, Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147 (5th Cir. 1954); Satterfield v. Lehigh Valley Railroad Co., 128 F.Supp. 669 (S.D.N.Y. 1955); and Krnach v. Electro Lift, Inc., 13 F.R.D. 131 (N.D.Ohio E.D.1952).

The purpose of the summons is to give efficient notice. Such notice has been given here. It would not be unreasonable to expect Mueller to turn over process received by him to his superior officers. In fact he did so in this case. This would not be an unreasonable expectation in a business relationship such as exists here. The fact that Mueller was under the direction of superior officers, as he alleges in his affidavit, lends support to this conclusion. It would not be unreasonable to expect that the agent of a corporation who is the factor or vehicle responsible for making his principal amenable to process would be under orders from his principal to turn over any and all messages, information and process which is beyond the scope of the agent's authority. Certainly, as a matter of law, the highest ranking agent within the state who is the means whereby a foreign corporation is subject to process is a proper person under Rule 4 (d) (3) to receive the summons on behalf of his principal.

The circumstances here provided for adequate notice; hence, the finding of *in personam* jurisdiction over defendant for the reason that it is doing business in this State and for the reason that service on Mueller was proper is not offensive to one's sense of "fair play and substan-

tial justice." International Shoe Co. v. State of Washington, supra. This Court believes that in this case fair play and substantial justice require that service be upheld.

### ORDER

Therefore, for the reasons set forth above;

It is ordered that the motion to quash the return of the summons in the above-entitled action, be, and the same is hereby denied.