Samuel C. Lurie and Josephine Lurie, Plaintiffs-Appellees, v. D. Gordon Rupe and Sylvan Lang, Individually and as Trustees Under a Trust Agreement Dated August 31, 1937, and San Antonio Corporation, a Delaware Corporation, Defendants-Appellees-Cross-Appellants. Helen G. Wallace, et al., Appellants-Cross-Appellees.

Gen. No. 48,797.

First District, Second Division.

August 14, 1964.

Crowley, Sprecher, Barrett & Karaba, of Chicago, for appellants and cross-appellees.

Gottlieb and Schwartz, of Chicago, for appellees and cross-appellants.

ON REHEARING

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal by petitioners-intervenors, Helen Wallace, Pauline Hirschberg, Norman Asher, David Horwich, Minnie Horwich and Arnold Shure, hereinafter referred to as petitioners, from an order entered in the Superior Court of Cook County on January 2, 1962, dismissing the complaint of the original plaintiffs, Samuel C. Lurie and Josephine Lurie, hereinafter referred to as plaintiffs, because (1) Sylvan Lang (defendant personally and as trustee) has not been served with process and is an indispensable party; and (2) complaint fails to state a cause of action since plaintiffs have failed to allege breach by defendants of any duty owing to plaintiffs. Petitioners also appeal from an order entered on February 5, 1962, denying their petition for leave to intervene and their motion to vacate the order of dismissal entered January 2, 1962. Petitioners and plaintiffs are residents of this State. Petitioners have adopted the complaint of the plaintiffs and made it a part of the petition. The plaintiffs are not appealing the dismissal.

There is a cross-appeal by all defendants alleging that the Superior Court did not have jurisdiction over

any or all of them collectively since they were all non-residents and none transacted business in Illinois and asking this court to reverse a portion of a decree entered on November 6, 1961, denying their motion to quash process on defendants, D. Gordon Rupe and San Antonio Corporation, a Delaware corporation.

This action was originally brought by plaintiffs for themselves and all others similarly situated in a representative suit charging that the trustees of a voting trust which controlled 85% of the 383,560 authorized and outstanding shares of the corporation had violated the trust agreement by selling corporate assets without notice in violation of Article IV, Section 2 of the voting trust which requires 20 days written notice upon all holders of voting trust certificates; by illegally extending the trust agreement in direct violation of Article VIII, Section 1, which provides that the trust should terminate in ten years as of August 31, 1947; and by failing to distribute the proceeds of a total or partial liquidation of the corporation to the trust beneficiaries and shareholders of the corporation in violation of Article IX, Section 1, which provides that in the event of a total or partial liquidation the trustees shall receive the money, securities, rights or property and shall distribute the same among the holders of trust certificates in proportion to their interests, or the trustees may deposit such monies or property with the Chicago Title and Trust Company as agent of the trustees with authority to make distribution thereof. Plaintiffs sought relief in damages against the trustees personally, sought to void the sale of the assets of the corporation, sought to void the alleged illegal extensions of the voting trust, and sought to force the trustees to distribute to the shareholders and certificate holders their fair share of the proceeds of the liquidation.

On February 1, 1962, a petition to intervene was filed, verified by Arnold I. Shure, a petitioner and

attorney, stating among other things that the plaintiffs had compromised their interest in the suit and had sold their certificates prior to the entry of the order of January 2, which order was entered in violation of section 52.1 of the Civil Practice Act and erroneously adjudicated the rights of the plaintiffs and the class they purported to represent. If such order be allowed to stand the petitioners and the interests of the class would be bound.

San Antonio Corporation is an outgrowth by reorganization of Smith Young Tower Corporation. On August 31, 1937, a written voting trust agreement was entered into by and between the defendants, Sylvan Lang and D. Gordon Rupe, and such of the owners and shareholders who might become party thereto. The defendants, Lang and Rupe, are Vice-President and President of the corporation respectively, as well as trustees of the voting trust and directors of the corporation. The principal business of San Antonio Corporation is the ownership of stock in certain subsidiary corporations. Chicago Title and Trust Company has been appointed transfer agent of the corporation and the voting trust and has served in this capacity for many years. The shares of San Antonio Corporation, the physical corpus of the voting trust, are deposited in Chicago with the Chicago Title and Trust Company. Suit was commenced by service of process in Illinois upon the Chicago Title and Trust Company and upon D. Gordon Rupe in Texas. Sylvan Lang was never served although a personal judgment is sought against him. Jurisdiction was properly quashed against Lang personally and no appeal has been taken from that order.

The voting trust was scheduled to expire on August 31, 1947. It was illegally extended by the trustees in 1947 and again in 1957. About May 1, 1959, the corporation entered into an agreement with the City of San Antonio, whereby it sold to the City assets con-

169

sisting of the San Antonio Public Service Company, a franchise to operate buses for public transportation in the City of San Antonio and the necessary equipment for the operation of the bus line. The defendants without notice to the certificate holders thereupon purchased the common stock of American Desk Manufacturing Co., a Texas corporation, and actively commenced the business of manufacturing desks and school furniture.

Before considering the intervention question it is imperative to determine whether there are enough contacts present for the courts of Illinois to take jurisdiction over the defendants. There are three classes of defendants: San Antonio Corporation, the trustees, and Rupe as an individual. Personal jurisdiction is sought against all three based on different contacts with Illinois. The primary illegal activities complained of occurred physically in the State of Texas: illegal sale of assets, illegal voting and illegal manipulation.

■■ Section 17 of the Civil Practice Act (Ill Rev Stats c 110, § 17) governs jurisdiction of the courts of this State and imposes jurisdiction on all persons whether or not a citizen or resident who perform any of four enumerated acts within the State. That the courts and legislature of a state have the power to phrase or interpret the jurisdictional power of that state to a point short of the bounds of federal due process is well settled. Perkins v. Benguet Consol. Mining Co., 342 US 437, 440 (1952); Missouri Pac. R. Co. v. Clarendon Co., 257 US 533, 535 (1922). Jurisdiction of the courts of Illinois has been limited for the present by the legislature of this State to the four enumerated acts set out in section 17 and to the pronouncements of the courts of this State interpreting that section. The case of Kaye-Martin v. Brooks, 267 F2d 394 (7th Cir 1959) has interpreted that in order to impose jurisdiction because of "the transaction of any business within this State" the "cause of action

170

must be based on events which occurred in Illinois." This interpretation was subsequently limited in the 1963 Historical and Practice Notes to the annotated statutes (SHA, 1963, c 110, § 17) to the effect that:

> "It was not the purpose of subsection (3) of section 17 to limit the assertion of jurisdiction under the section to cases in which every element of the transaction on which the claim is based occurred within the State of Illinois . . . .
>
> "Jurisdiction may exist under section 17 even though only some of the events upon which the cause of action is based occurred in Illinois, provided that those events amounted to the minimum contacts with the state which are essential to jurisdiction."

 San Antonio Corporation has continuously and systematically transacted business in Illinois for the past seventeen years. It has maintained the Chicago Title and Trust Company as transfer agent, registrar, mailing agent and dividend disbursing agent of the stock held in the voting trust for the corporation in Illinois. Defendants rely on two New York cases: Robbins v. Ring, 166 NYS2d 483 (1957); Joseph Walker & Sons v. Lehigh Coal and Nav. Co., 167 NYS2d 632 (1957). These cases quash jurisdiction on two nonresident corporations where contacts were sought to be established through the activities of their New York transfer agents. The jurisdictional statute in effect in New York at the time of decision in these cases was not as broad as the comprehensive statute in effect in this State. We feel in no way bound by these cases. The test now is not the old "doing business" test but merely whether "minimum contacts" are present sufficient to allow the forum to assume jurisdiction. Grobark v. Addo Machine Co., Inc., 16 Ill2d 426, 431, 441, 158 NE2d 73 (1959). It is quite true that the duties of a transfer agent are ministerial

subsidiary financial duties often performed in a foreign state due to the requirements of a stock exchange or as in this case under court order. These are not relevant considerations under the Illinois law nor under the federal cases interpreting the limits of the due process clause. Both the United States Supreme Court and our own courts have laid down rules that the imposition of jurisdiction should depend upon the "quality and nature" of the forum contacts (International Shoe Co. v. Washington, 326 US 310, 319 (1945)); whether defendant "engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum" (Hanson v. Denckla, 357 US 235, 253 (1958)); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill 2d 432, 440, 176 NE2d 761 (1961); the test should not be "mechanical or quantitative" (Nelson v. Miller, 11 Ill2d 378, 384, 143 NE2d 673 (1957)); and the facts of each case determine the outcome (Perkins v. Benguet Consol. Mining Co. (supra at 445)).

In this case the relevant inquiry is whether San Antonio Corporation's activities in this State were of such a nature as to impose jurisdiction and whether any part of the cause of action arose in this State. The cause of action here centers around the illegal manipulation of a voting trust. The Chicago Title and Trust Company performed activities as agent for both the corporation and the trustees intimately connected to the manipulation and perpetuation of the voting trust. While it might easily be said that the activities of a transfer agent are not of a qualitative nature in a case having no connection with the internal administrative and financial arrangements of a corporation, they are of a substantial qualitative nature here. Grobark v. Addo Machine Co., Inc. (supra) which quashed jurisdiction on a New York corporation because the two distributors in Illinois were independent businessmen

selling their own merchandise which had been manufactured by Addo, does not apply here at all. It is true that Chicago Title and Trust Company is an independent organization doing business in Illinois. This, standing alone, is not a relevant factor. Consolidated Cosmetics v. D–A Publishing Co., 186 F2d 906, 908 (1951). Chicago Title and Trust is the expressly appointed agent of the defendant, continuously entrusted with certain well defined duties which it would not perform unless directed to do so. There is no profit motive or increased sales because San Antonio Corporation employs Chicago Title and Trust, but this does not detract from the continuous business contacts between the two companies. In Consolidated Cosmetics v. D–A Publishing Co. (supra) a New York publisher used an independent Illinois printing company solely to qualify with the postal department for mailing second class matter. The court felt that the activities of printing and mailing in Illinois, "their extent and their continuity, their nature and their effect, were such inevitably as to constitute doing business in Illinois." (908)

▮ The activities of the agent in this State were part of the machinery necessary to perform the allegedly illegal manipulations and extensions. Chicago Title and Trust Company was actually a party to the agreement illegally extending the voting trust. Furthermore the corpus of the voting trust, the center of this controversy, is deposited with the agent here. We believe that these contacts occurring in Illinois are sufficiently related to the cause of action to impose jurisdiction.

▮ Defendants have pointed out that Rupe has been sued personally and that therefore jurisdiction may not be imposed unless he was physically present in this State and performed here personally some of the activities out of which this cause of action arose.

173

Rupe is being sued personally because under settled trust law a trustee is personally liable for certain of his acts. It is immaterial that the trustee is not personally at fault; the absence of blameworthiness on his part affects his right of indemnity out of the trust estate, but it does not affect his liability to third persons. III Scott on Trusts § 264 (2d ed 1956); Piff v. Berresheim, 405 Ill 617, 623, 92 NE2d 113 (1950). It is quite clear that Rupe's personal activities are immaterial to liability in this case. He stands or falls only upon his activities performed as trustee. In this connection if the trust has performed activities in Illinois sufficient to meet the tests of the inquiries outlined above, Rupe is subject to the power of the courts of this State and liable for a personal judgment whether or not he personally performed any acts within this State. Chicago Title and Trust Company has been agent for the Trust and for Rupe without interruption since 1937. Its activities for the trust are of substantially the same order as those performed for the corporation with the addition that it acted as depository for shares of San Antonio Corporation which comprised the body of the trust. In a case which did not involve administrative and financial issues connected with the duties and activities of the transfer agent there might not be substantial contact. There certainly is substantial contact here.

We believe that the necessary contacts have been established between this State and the defendants through continuous and substantial business activities with their transfer agent and depository. These same activities are sufficiently closely related with the cause of action to support jurisdiction personally. The defendants have employed an agent in this State for many years and to that extent they have been protected by our laws. Defendants have received ade-

quate notice of the litigation. The basic requirements of fairness under the due process clause have been met.

The lower court dismissed plaintiffs' suit for two reasons: (1) a necessary and indispensable party had not been served; (2) complaint fails to state a cause of action since plaintiffs have failed to allege breach by defendants of any duty owing to plaintiffs.

██ Both trustees are necessary parties to this suit. The rule is as follows: "Wherever two or more co-trustees are thus jointly and severally liable in the same amount for a breach of trust which is not purely tortious in its nature,—as where it consists in a failure to carry out the directions of the trust, or a failure to make proper investments, or other like acts of omission or commission which are not fraudulent, or do not involve a willful breach of good faith, . . . in such cases, upon the general principles of equity pleading, all the trustees who are liable should be joined as defendants in a suit brought by the beneficiary; . . ." 4 Pomeroy, Equity Jurisprudence § 1081 (5th ed 1941); Bogert, Trusts and Trustees § 871 (2d ed 1962). In Illinois trustees are considered necessary and indispensable parties. Hutchinson v. Ayres, 117 Ill 558, 567, 7 NE 476 (1886); Anderson v. Elliott, 1 Ill App2d 448, 453, 117 NE2d 876 (1954); White v. Macqueen, 360 Ill 236, 243, 195 NE 832 (1935). Here there were no allegations of fraud or willful breaches of good faith. Moreover the breach of trust charged arises out of failures to carry out directions of the trust.

██ Section 25(1) of the Civil Practice Act (Ill Rev Stats c 110, § 25(1)) provides in part:

> "If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title

which the judgment may affect, the court, on application, shall direct him to be made a party."

In Oglesby v. Springfield Marine Bank, 385 Ill 414, 429–430, 52 NE2d 1000 (1944) the court stated:

"We are, therefore, clearly of the opinion that when the instrument of April 22, 1925, was called to the attention of the court by the amended answer, the court should, of its own motion, have suspended all further proceedings in the cause until all of the parties interested in the subject matter of the alleged trust were made parties and properly brought before the court. . . ."

The Chancellor was aware of the existence of Sylvan Lang since the court had ruled in his favor on the motion to quash. The rule requiring that a necessary party whose interest will be affected by a final decree must be brought in ordinarily applies only where the court proceeds to a trial on the merits. Oglesby v. Springfield Marine Bank (supra at 423). Whether a cause which has been dismissed after the pleader has elected to stand upon his complaint is a decision on the merits has not been decided in Illinois. A dismissal under such circumstances was a final order for purposes of perfecting an appeal under section 77 of the Civil Practice Act (Ill Rev Stats, c 110, § 77 (1961)); Doner v. Phoenix Joint Stock Land Bank, 381 Ill 106, 45 NE2d 20 (1942); Roddy v. Armitage-Hamlin Corp., 401 Ill 605, 83 NE2d 308 (1949). Restatement, Judgments § 49 (1942) and comments thereafter would seem to indicate that it was not a decision on the merits, however, because the judgment although final is based merely on rules of procedure rather than on rules of substantive law. We do not need to decide this question here, but, there is certainly enough doubt in the outcome that the lower court abused his discretion in dismissing the suit under the circum-

stances. The suit should not have been dismissed for lack of a necessary party when service easily could have been perfected.

[11] There is no substance to the point that the complaint failed to state a cause of action. Paragraph 3 of the complaint stated that Lang and Rupe were trustees for the purpose of voting stock deposited with them. Paragraph 6 stated that Samuel Lurie and Josephine Lurie were owners and holders of certificates of beneficial interest in the voting trust and had purchased those certificates prior to the acts of breach charged. Paragraph 13 charged that the defendants were notified and demand was made that they perform their duty in compliance with various sections of the trust which were set up in the complaint. This established a sufficient cause of action against the trustees.

Paragraph 14 alleged that the action was brought for certificate holders and stockholders as a class; that their rights are identical and common questions of law and fact will govern and decide the rights; that the owners and holders of voting trust certificates and of stock in the corporation are numerous and live in various parts of the United States; that it would be impossible to join them; and that plaintiffs can and will fairly and adequately represent the rights and interests of all other owners. In Oppenheimer v. Cassidy, 345 Ill App 212, 221, 101 NE2d 678 (1951) where plaintiff, voting trust certificate holder, alleged that he brought an action for certificate holders and stockholders together and that their interests were the same, the court pointed out that an action is not representative merely because the parties so designate it. Contrary to the facts in the Oppenheimer case plaintiffs have alleged and have not been challenged by other shareholders that they represented both shareholders and voting trust certificate holders. The theory of plaintiffs' case was that there was a

177

clear breach of duty to the certificate holders in the noncompliance with the notice provisions of the voting trust. Correspondingly they allege a similar breach of management's fiduciary obligations to all the shareholders through the improper use of the voting trust to accomplish a sale of the corporate assets.

In Eisner v. Davis, 109 NYS2d 504, 505–506 (1951) the court stated:

> ". . . No redress is sought for or on behalf of the corporation. The action herein, as the complaint plainly and clearly discloses, is a personal one, founded on a contract made with the defendant Davis to act as a trustee—as a voting trustee —for the common benefit of all the parties to the agreement, including the plaintiffs; that he violated his duties and obligations to the plaintiffs pursuant to a conspiracy to wilfully injure them by violating his duties and obligations as such trustee resulting in injury and damage to them, and they seek a recovery therefor."

See 13 Fletcher, Cyclopedia Corporations §§ 5908, 5915 (1961); 1 Nichols Illinois Civil Practice § 281 (1961). The interests of the shareholders and certificate holders are identical and properly alleged so as to make out a proper class action. The complaint filed by the plaintiffs in this case set out a cause of action and was improperly dismissed. The cause should be reinstated upon remand.

 There has been some discussion between petitioners and defendants in regard to whether this suit is a stockholders' derivative suit. A determination of this point is not necessary to dispose of this appeal. A representative class suit has been properly set out and the members of that class would be bound by a decision on the merits.

Section 26.1 of the Civil Practice Act (Ill Rev Stats c 110, § 26.1) provides in part:

178

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: (a) when a statute confers an unconditional right to intervene; or (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment decree or order in the action; . . ."

The petition for intervention was filed on February 1, 1962. Petitioners alleged that they had no notice that their interests were not adequately represented prior to January 2, 1962, when an order dismissing plaintiffs' suit was entered because of their election to stand on the original complaint.

 Where the petitioner's interest is identical with that of a party to the litigation his interest is adequately represented by that party. A petitioner's interest may be inadequately represented, although identical with the interests of the first parties, if the first party is not diligent in its prosecution or defense of the action. 84 ALR2d 1421.

 In Duncan v. National Tea Co., 14 Ill App 2d 280, 297–300, 144 NE2d 771 (1957), a stockholder's derivative suit, the court held that the advanced age of the plaintiff and the fact that she had disposed of her stock in the corporation prior to the filing of the intervention petition supported the allegation that her representation of the intervenors' interests might be inadequate. See also Malcolm v. Cities Serv. Co., 2 FRD 405 (1942); 84 ALR2d 1438. In passing upon the merits of the petition to intervene the allegations set out in the petition must be taken as true. HFG Co. v. Pioneer Pub. Co., 162 F2d 536, 540 (1947). Petitioners have alleged that the plaintiffs disposed of their stock and certificates prior to the dismissal of the suit and that the dismissal although involuntary on its face was in fact collusively procured by their election to

stand upon the complaint. There is no evidence in the record to the contrary. The petition on its face is sufficient to establish that the plaintiffs did not sufficiently represent the petitioners or the class at the time of the dismissal of the suit. The petition was timely since the petitioners came before the court soon after they discovered that they had been improperly represented. The argument that there now is no suit in which to intervene has been obviated since we have held that the suit was improperly dismissed.

This cause is remanded with directions to vacate the order of dismissal, allow the petitioners to intervene and to proceed on the merits. Accordingly the order of January 2, 1962, is reversed. The order of February 5, 1962, is reversed. The portion of the decree of November 6, 1961, appealed from by the cross-appellants is affirmed.

Affirmed in part, reversed in part and remanded with directions.

FRIEND, J., concurs.

BURKE, P. J., took no part.