Gerald LINDLEY, Plaintiff,

v.

ST. LOUIS–SAN FRANCISCO RY. et al.,
Defendants.

No. 65 C 2233.

United States District Court
N. D. Illinois, E. D.

Oct. 27, 1967.

Fred Lane, Chicago, Ill., Piacenti & Cifelli, Chicago Heights, Ill., for plaintiff.

Deacy & Deacy, and Thomas Deacy, Kansas City, Mo., Taylor, Miller, Magner, Sprowl & Hutchings, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motion of Defendant Railway to Dismiss

This is a two count tort action, removed by defendants from the Circuit Court of Cook County, Illinois. Diversity of citizenship is present, together with the requisite jurisdictional amount. In Count I plaintiff alleges that while he was disabled along and upon a railroad track at or near the Village of Valley Park, County of St. Louis, State of Missouri, and while he was in the exercise of due care, defendants "disregarding their duty * * * negligently and carelessly owned, operated, managed and controlled * * * (a) locomotive and four-car train so as to cause it to run into, upon and over and against the plaintiff * * *" In Count II plaintiff avers that the above mentioned conduct of defendant was wilful and wanton. Each count seeks joint and several damages in the amount of one million dollars.

Defendant, St. Louis-San Francisco Railway, a Missouri corporation, with its principal place of business also in Missouri, appears specially to move for an order of dismissal on the grounds that personal jurisdiction, valid service of process, and venue are all lacking.

Personal service was made by plaintiff upon Walter Forst, Chief Clerk of defendant's Chicago office, at that office. Defendant challenges that service as illegal, null and void, since in its view, it is not subject to the in personam jurisdiction of this Court. In support thereof, the railroad alleges the following: (1) It is a Missouri corporation not qualified to do and not doing business in Illinois, and has not consented to be sued within Illinois or this judicial district; (2) No part of the said cause of action arose from any act of this defendant within Illinois; (3) Its lines of railroad lie entirely outside Illinois and none of its tracks, railroad beds, stations, or other equipment is located within Illinois; (4) None of its employees is authorized by the corporation to accept service of process in Illinois on its behalf; (5) It does not carry out any of its corporate functions, sell tickets, issue bills of lading, make contracts for the transportation of freight or passengers, or receive or pay out any money in Illinois; (6) It does not maintain any fiscal or financial agent in Illinois, nor do any of its corporate or managerial officers reside within the state; (7) All contracts for carriage are subject to acceptance at defendant's principal place of business in Missouri; (8) The sole and only activity of this defendant within the State of Illinois is the solicitation of traffic for its lines of railroad operated wholly outside the state, and its employees and the office are maintained solely for this purpose; (9) The only property owned and used within the State of Illinois is office furniture in its Chicago office.

To this picture plaintiff adds that the Chicago office has been in existence for at least 37 years, and alleges certain other named but unsubstantiated activities of defendant within Illinois, which are categorically denied in affidavits by defendant.

We will consider separately below the contested issues of jurisdiction, service of process, and venue.

## I. *Jurisdiction*

■ In a diversity case, there is no longer question that the law of the state in which the District Court sits determines whether a defendant is subject to its in personam jurisdiction. Canvas Fabricators, Inc. v. William Hooper & Sons Co., 199 F.2d 485 (7th Cir. 1952); Woods v. Interstate Realty Co., 337 U.S. 535, 537–538, 69 S.Ct. 1235, 93 L.Ed. 1524 (1948). Hence, we are duty-bound to respect the law of Illinois governing jurisdiction.

Defendant advances Sec. 17 of the Illinois Civil Practice Act, Ill.Rev.Stat. 1965, c. 110, § 17, as controlling of the instant case. Insofar as relevant the section provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

(c) The ownership, use, or possession of any real estate situated in this State;

(d) Contracting to insure any person, property or risk located within this State at the time of contracting;

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act[1], with the same force and effect as though summons had been personally served within this State.

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

Since the alleged tort which occurred in Missouri, admittedly is not a cause of action arising out of the transaction of any business within Illinois, as required by Sec. 17(3), defendant urges dismissal for lack of jurisdiction. Its view would make Sec. 17(1) dispositive of the jurisdictional issue as to all nonresident defendants, whether service was effected in Illinois or elsewhere. Adoption of that theory would make it unnecessary for us to decide whether defendant had such contacts with Illinois as to make him amenable to jurisdiction, since even if he did, the alleged wrongdoing did not stem from any of those contacts.

■ Plaintiff, conversely, believes Sec. 17 to be irrelevant in the determination of this issue. Indeed, he urges that Sec. 17 applies only where service is effected *out of Illinois*. He avers that "Illinois has in personam jurisdiction over Defendant based upon the common law of Illinois and independently of Section 17." Plaintiff respectfully suggests to the Court that the common law of personal jurisdiction in Illinois has been expanded generally and that Section 17 merely codifies one particular area of that expanded jurisdiction." (Pl.Br. p. 11). We must agree.

■ The due process clause of the Fourteenth Amendment to the U. S. Constitution governs the jurisdictional limits of Illinois over nonresident defendants. The older cases relied on a "constructive presence" theory to determine whether a foreign corporation was "doing business" within a state so as to be subject to its jurisdiction. See e. g. St. Louis S.W. Ry. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486 and Missouri K. and T. Ry. Co.

---

1. Section 16 of this chapter.

v. Reynolds, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788.

But the Supreme Court's holding in International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), realized that the term "presence" was only symbolic of "those activities of the corporation's agent within the state which courts will deem to be sufficient to satisy the demands of due process." Later cases have amplified and expanded the Court's viewpoint that:

> "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

See e. g., McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). From these cases the "minimum contacts" theory was born. In our opinion, if the necessary minimum contacts are present in this case, this Court should take jurisdiction even though the immediate cause of action arose in Missouri and was in no way connected with the defendant's activities in Illinios. Constitutional authority for this position was sustained in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), which held that jurisdiction may be obtained over a foreign corporation which has sufficient minimum contacts with the forum, even though the cause of action arose from actions unconnected with the activities conducted within the forum. The Illinois Supreme Court adhered to that position in Hertz Corporation v. Taylor, 15 Ill.2d 552, 155 N.E.2d 610 (1959), although *Perkins* was not cited.

The Illinois courts have discarded the old "presence" viewpoint in favor of the "minimum contact" theory in such cases as Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957) and Gray v. American Radiator and Sanitary Corp., 22 Ill. 2d 432, 176 N.E.2d 761 (1961). In the latter case the Supreme Court said:

> "Whether the type of activity conducted within the State is adequate to satisfy the requirement depends upon the facts in the particular case * * * The question cannot be answered by applying a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable in the circumstances. In the application of this flexible test the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum * * * The relevant decisions since Pennoyer v. Neff show a development of the concept of personal jurisdiction from one which requires service of process within the State to one which is satisfied either if the act or transaction sued on occurs there *or if defendant has engaged in a sufficiently substantial course of activity in the State,* provided always that reasonable notice and opportunity to be heard are afforded * * *" 22 Ill. 2d at 440, 176 N.E.2d at 765 (emphasis supplied).

Although these decisions construed Section 17, it is not unreasonable to assume that they had reference to the entire jurisdictional question. It is unreasonable for us to believe that Sec. 17 meant to preempt the entire jurisdictional field without saying so. Note particularly the *underscored* portion of the above quotation, for an indication that the Supreme Court did not believe Sec. 17 to be all-inclusive. The Joint Committee Comments, with reference to Sec. 17, make it clear that the section was intended "to expand jurisdiction over nonresidents having 'contacts, ties or relations' with the State", and to afford by subsection (2) a means of effecting out of state service. Subsection (3) contains a clear inference that other bases of jurisdiction are still extant with

its qualifying phrase, "in which jurisdiction over him is based upon this section." In other words, Sec. 17 partakes of a straightforward "long arm" statute. Subsections (1) and (3) prescribe the types of activities over which jurisdiction may be obtained, and subsection (2) makes clear an appropriate out of state manner of service of process.

A simple example will serve to illustrate the weakness of defendant's argument. Assume a foreign corporation, which nevertheless transacts a considerable volume of business within Illinois so that under the old "doing business" criterion it would have been amenable to suit in Illinois upon a tort committed far from the boundaries of this state and in no way connected with the corporation's Illinois activities. If Sec. 17 is all-inclusive, as defendant would have us believe, the hypothetical corporation would not now be amenable to suit in Illinois on such an action, even though its business far surpasses the minimum contacts required by the due process clause for assertion of jurisdiction. Such a result could not have been intended by Section 17 without a clear expression thereof.

■ In Nelson v. Miller, adverted to above, the Supreme Court of Illinois said that Sec. 17 "reflect[s] a conscious purpose to assert juridiction over non-resident defendants to the extent permitted by the due-process clause." It is clear that the due process clause would not be offended if the hypothetical corporation described above were to be sued in Illinois. By preempting the entire jurisdictional question, Sec. 17 would have the strange effect of expanding the limits of jurisdiction over one class of defendants, but of severely limiting it in certain other instances. Such a result would be paradoxical indeed.

■ A recent decision by our brother, Judge Will, excellently discusses the current constitutional standards governing the assertion of jurisdiction over non-residents, and is in explicit agreement with our conclusion that Sec. 17 intended only to fill the constitutional gap

"between the old outer limits of due process grounded on continuous, systematic activities and the new expanded limits which included solitary acts. * * * " Robert Gordon v. Int'l. Tel. & Tel. Corp. et al., 273 F.Supp. 164, 168 (N.D. Ill. September 19, 1967). He further stated:

"In conjunction with the singular activities tests set forth in section 17, it is clear that Illinois intended to retain the multiple activities test which allowed in personam jurisdiction over nonresidents in suits unrelated to Illinois activities. Hertz Corp. v. Taylor, supra. Thus, Illinois has confirmed that it wishes to exercise all possible bases of jurisdiction which are consistent with the due process clause.

"We conclude that since Illinois has manifested an intent to exercise as broad a jurisdiction as due process allows and since the due process clause allows the exercise of in personam jurisdiction over a nonresident who systematically solicits and obtains business in the forum state, we can properly exercise jurisdiction over the remaining defendants."

Edwards v. St. Louis-San Francisco Railroad Co., 361 F.2d 946 (7th Cir. 1966), is cited to support the railroad's position herein. The complaint there asserted a cause of action arising outside Illinois and service was made in the same Chicago office of defendant. Judge Perry of this Court dismissed on August 10, 1965, in No. 64 C 1594, and in his unpublished memorandum stated:

"The court, having considered the motion of defendant St. Louis-San Francisco Railway Co. to dismiss for lack of jurisdiction and lack of service of process, it is ORDERED that said motion be and it is hereby granted."

It does not appear from the certified record that the issue herein considered was briefed or given consideration in that proceeding. Apparently, on appeal, the jurisdictional issues again were briefed in cursory fashion and the Seventh Circuit, in affirming, assumed that Section 17 was applicable, without

discussion. Accordingly the Court of Appeals dismissed since the cause of action arose outside the state.

. In the instant case, the issue was briefed more extensively and we feel justified in giving this issue the thorough treatment we think it deserves.

██ Defendant cites Lurie v. Rupe, 51 Ill.App.2d 164, 201 N.E.2d 158, cert. denied Rupe v. Wallace, 380 U.S. 964, 85 S.Ct. 1108, 14 L.Ed.2d 154 (1964), which states: .

"Section 17 of the Civil Practice Act * * * governs jurisdiction of the courts of this state and imposes jurisdiction on all persons whether or not a citizen or resident who perform any of four enumerated acts within the State. That the courts and legislature of a state have the power to phrase or interpret the jurisdictional power of that state to a point short of the bounds of federal due process is well settled * * * Jurisdiction of the courts of Illinois has been limited for the present by the legislature of this State to the four enumerated acts set out in section 17 and to the pronouncements of the courts of this State interpreting that section * * *" 51 Ill.App.2d at 170, 201 N.E.2d at 161.

A nonresident corporation, which transacted business in Illinois, was there held to be subject to the court's jurisdiction under Sec. 17(1), even though service was made in Chicago upon its resident agent. No case authority was cited to sustain the quoted proposition that Section 17 was intended to preempt the entire jurisdictional field. We construe the pronouncement of the Illinois Supreme Court in Nelson v. Miller, as later expanded by *Gray,* to the effect that Illinois has intended by Sec. 17 to expand its jurisdictional limits to the extent permitted by the due process clause, as the present state of the Illinois law on the issue. See Gordon v. Int'l Tel. & Tel., supra; Ziegler v. Hodges, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967); Koplin v. Thomas, Haab & Botts, 73 Ill. App.2d 242, 219 N.E.2d 646 (1966). We do not believe that the spirit of these cases countenances the cutting back of the jurisdictional limits over a class of persons heretofore unquestionably within the state's jurisdiction. Rather we interpret Sec. 17 as extending the jurisdictional basis over nonresident defendants who perform one of four enumerated acts within the state. As we have said, the legislature seemed to indicate, by negative inference in Sec. 17(3), that other sources of jurisdiction were not to be disturbed by that section.

In view of our conclusion that Sec. 17 is inapplicable to this case, we must now decide whether in fact defendant has such minimum contacts with Illinois as to be subject to its jurisdiction. We are of the opinion that it does.

██ Defendant has maintained a traffic office in Chicago for at least the past 37 years which is staffed by several employees. The office, listed in the Chicago Telephone Directory, serves the function of soliciting traffic for defendant's out of state freight lines. All contracts for carriage are subject to acceptance in Missouri. Defendant cites Booz v. Texas and P. Ry. Co., 250 Ill. 376, 95 N.E. 460 (1911), and Bull and Co. v. Boston and Maine R.R., 344 Ill. 11, 175 N.E. 837 (1931), which hold that mere solicitation is not doing business in Illinois. Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 199 F.2d 485 (7th Cir. 1952), and Roberts v. Evans-Case Co., 218 F.2d 893 (7th Cir. 1955) uphold that position.

But in view of the dramatic change wrought in the Illinois law by Nelson v. Miller, and Gray v. American Radiator, the *Booz* case should no longer limit our considerations. That is the view of the writers of the Supplement to Historical and Practice Notes to Sec. 17 of the Practice Act. Ill.Anno.Stat., c. 110, Sec. 17, 1966 Cumulative Pocket Part, p. 23. *Booz, Bull, Canvas,* and *Roberts* were all based upon the old "doing business" criterion and were decided prior to either *Nelson* or *Gray.* This change is indicated by Berlemann v. Superior Distributing Co., 17 Ill.App.2d 522, 151 N.E.2d 116 (1958), which held that an

out of state corporation's soliciting of purchase orders and location contracts by employees in Illinois, coupled with its promise to send an employee into the state to train plaintiff "was the transaction of *some* business in Illinois" (Court's emphasis), thereby making the corporation subject to the Illinois court's jurisdiction. Unlike the instant case, the cause of action in *Berlemann* arose out of the activities occurring within the state. Incidentally, defendant incorrectly cited Berlemann in support of his contention that Sec. 17 controls this case.

Other recent cases extending the exercise of jurisdiction in Illinois are Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76 (1962), and Lurie v. Rupe, 51 Ill.App.2d 164, 201 N.E.2d 158 (1964). *Kropp* upheld jurisdiction over a New York company which had purchased machinery from the Illinois plaintiff by mail. Defendant also visited plaintiff's premises in Illinois to inspect the machinery. Jurisdiction was upheld by reason of "[e]ither the making of the alleged *contract itself, or the activity in further-ance of it*, while defendant was physically present in Illinois." (37 Ill.App.2d at 481, 186 N.E.2d at 79.) [1]

In *Lurie*, although relying on Sec. 17 as the statutory basis of jurisdiction, the court held that when a corporation maintained a transfer agent in Illinois for many years and that agent also performed services as transfer agent of a voting trust, both the corporation and the nonresident trustee subjected themselves to the jurisdiction of the State of Illinois under Sec. 17, even though the trustee had personally done nothing within the state. The court cited Consolidated Cosmetics v. D–A Publishing Co., 186 F.2d 906, 908 (7th Cir. 1951), with approval. In that case, a New York publisher used an independent Illinois

printing company solely to qualify with the postal department for mailing second class matter. The court thought that "these activities, their extent and their *continuity*, their nature and their effect, were such inevitably as to constitute doing business in Illinois" (emphasis added). In addition, the court said:

"The functions of a magazine publishing company, obviously, include gathering material to be printed, obtaining advertisers and subscribers, printing, selling and delivering the magazines for sale. *Each of these*, we think, constitutes an essential factor of the magazine publication business. Consequently if a non-resident corporation sees fit to perform *any one* of those essential functions in a given jurisdiction, it necessarily follows that it is conducting its activities in such a manner as to be subject to jurisdiction * * * *" 186 F.2d 908 (emphasis added).

Most of the defendants in the earlier cases referred to above, pursued some activities in addition to solicitation. But we are not foreclosed by those decisions, we feel, from holding the instant defendant to be within the jurisdiction of this Court. Such federal cases as McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), have reinterpreted the due process clause and made obsolete the "presence" theory upon which cases such as *Booz* formulated the mandate of "solicitation plus." Indeed, International Shoe v. State of Washington, etc., itself, the very fount from which the new minimum contacts theory evolved, held that solicitation on a continuous basis was sufficient to subject the actor to *in personam* jurisdiction.

---

[1]. The *Kropp* case inferred that the physical presence of the defendant within Illinois is a necessary prerequisite to his subjection to Illinois jurisdiction. That theory is clearly incompatible with the now controlling Illinois law, represented by Gray v. American Radiator and Sanitary Corp., which eliminates the requirement of physi-

cal presence. The instant defendant, however, does pursue certain business activities within Illinois. We cite *Kropp* only to illustrate a particular factual situation under which a defendant has been subjected to jurisdiction, and not in support of the "presence" theory, to which it apparently subscribes.

The continuity and seeming permanence of defendant's Illinois activities is one of the factors which leads us to the conclusion that it should be subject to the jurisdiction of the Illinois courts, even though such activities may consist only of solicitation. Defendant came into this state in the advancement of its own interests. Since 1937 it has enjoyed the benefits and protection of Illinois law. Such benefits have included the availability of the Illinois courts to enforce its rights. It cannot be gainsaid that the exercise of rights carries with it responsibilities. A nonresident corporation should not be able to rely upon the benefits associated with a continuous course of business activity without facing up to the burdens. One of the necessary burdens, in our opinion, is the subjection of the corporation to the jurisdiction of our courts.

In addition, this case is not brought by a stranger to our state. It was instituted by an Illinois citizen, whose health and welfare is the proper concern of this state's protective policy. That the alleged injury occurred in Missouri does not detract from that concern.

Finally, it must be emphasized, as was recognized in Consolidated Cosmetics, that the solicitation of business on a regular and systematic basis is not a minor activity. It is a *sine qua non* to the transaction of business and when done continuously is a very substantial activity in itself. Even though the contracts which may have resulted from the solicitation efforts of defendant's Chicago office could only be accepted at defendant's home office in St. Louis, the solicitation of continuous and systematic freight traffic in Illinois by resident agents seems to constitute greater contact with Illinois, than the activities of some of the defendants who have been held amenable to Illinois jurisdiction on the basis of a single business transaction herein. See Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76 (1962); National Gas Appliance Corp. v. A. B. Electrolux, 270 F.2d 472 (7th Cir. 1959); Gray v. American Radiator and Sanitary Corp., supra.

From all of the above, we believe that defendant's course of continuous solicitation in this state coupled with the maintenance of an office herein, is sufficient to subject it to personal jurisdiction, and that our conclusion conforms to "traditional notions of fair play and substantial justice." We gather support from the Supreme Court's statement in Nelson v. Miller that "Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." 11 Ill.2d 378 at 389, 143 N.E.2d at 679 (1957). As we have heretofore stated, we consider that statement to be of general import to the entire question of jurisdiction in Illinois. That solicitation, of itself, and without more, is a sufficient basis for jurisdiction within the limits of due process was recently affirmed in Hornstein v. Atchison, Topeka and Santa Fe R.R., 229 F.Supp. 1009 (W.D.Wis. 1964), a case nearly on all fours with the instant one. In reaching this decision we are not reaching a revolutionary result, but merely following to its logical terminal the constitutional road already trodden by the Illinois courts. In acting as a "state court" in a diversity case as we must, we feel confident that our decision is one that would have been decided similarly by an Illinois State Court.

In accord with our findings, we hold the defendant St. Louis-San Francisco Railway Company to be within the jurisdiction of this Court.

II. *Service of Process*

Service was made at defendant's Chicago office upon Walter Forst, the Chief Clerk there. Section 13.3 of the Illinois Civil Practice Act is controlling. It reads:

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law * * *"

Service in the instant case was made upon an "agent" of the corporation found within the state. Such instate

service is properly made upon either a domestic or foreign corporation, and with regard to the latter, no distinction is made between those which have qualified to do business in the state, and those who do some business in the state without qualifying. Magnaflux Corp. v. Foerster, 223 F.Supp. 552, 559 (N.D.Ill. 1963); Consolidated Cosmetics v. D–A Publishing Co., 186 F.2d 906 (7th Cir. 1951). Since jurisdiction over the defendant has been sustained there can be no argument with the propriety of the service made in this case.

III. *Venue*

Venue is clearly proper here. Section 1391(a) of Title 28, U.S.C., provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

Since plaintiff is an Illinois resident, this action is properly laid in this court. See 1 Moore, Federal Practice, 910.142 (5.–3), p. 1494.

For the several reasons stated above, defendants' motion to dismiss is hereby denied.