(No. 34244.—

NORBERT NELSON, Appellant, *vs.* HOWARD MILLER,
Appellee.

*Opinion filed June 17, 1957.*

PEDDERSON, MENZIMER AND CONDE, of Rockford, (DALE F. CONDE, of counsel) for appellant.

WELSH AND WELSH, of Rockford, (JOHN T. HOLMSTROM, JR., of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The issues in this case concern the applicability and the constitutionality of the 1955 amendments to sections 16 and 17 of the Civil Practice Act. (Ill. Rev. Stat. 1955, chap. 110, pars. 16, 17.) As amended, those sections authorize the entry of judgments *in personam* on personal service of summons outside the State in enumerated classes of cases.

The complaint was filed in April of 1955. It alleged that the defendant, who is a resident of Wisconsin, was engaged in the business of selling appliances; that on June 3, 1954, he sent one of his employees to deliver certain appliances, including a gas cooking stove, to the plaintiff in Pecatonica, Illinois; that at the request of the defendant's employee the plaintiff assisted in unloading the stove from the truck, and that in the course of this operation defendant's employee negligently pushed the stove so as to

sever one finger on plaintiff's right hand and injure another. Plaintiff claimed damages in the sum of $7500.

Two attempts to serve summons failed because the defendant was not found. In February of 1956, after the amendments to the Civil Practice Act had become effective, summons was served personally on the defendant in Wisconsin. The defendant appeared specially and moved to quash the summons on the ground that the amended provisions contravene the United States constitution and the constitution of Illinois. The court granted the motion, and plaintiff appeals.

Section 17 is as follows:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

(c) The ownership, use, or possession of any real estate situated in this State;

(d) Contracting to insure any person, property or risk located within this State at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

The pertinent part of section 16 is as follows:

"(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication."

We consider first the defendant's contention that the new provisions of the statute cannot be applied to him because the cause of action arose before the effective date of the provisions authorizing extraterritorial service on nonresident defendants. Insofar as this claim is based on the Federal constitution it is without merit. Sections 16 and 17 do "not extend either to destruction of an existing cause of action or to creation of a new liability for past events." *Cohen* v. *Beneficial Industrial Loan Corp.* 337 U.S. 541, 554 (1949); see also *Ex parte Collett,* 337 U.S. 55, 71 (1949); *cf.* Federal Rules of Civil Procedure, Rule 86.

Insofar as the claim is grounded in Illinois law it is fully disposed of by our recent decision in *Ogdon* v. *Gianakos,* 415 Ill. 591, 597 (1953), where we said: "The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. (*Chicago and Western Indiana*

*Railroad Co.* v. *Guthrie,* 192 Ill. 579; *Peoples Store of Roseland* v. *McKibbin,* 379 Ill. 148; *Board of Education* v. *City of Chicago,* 402 Ill. 291.) This statute embodies no saving clause as to existing litigation. It merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure." See also *Orlicki* v. *McCarthy,* 4 Ill.2d 342, 347-48 (1954).

As in the *Ogdon case,* the statute before us contains no saving clause. And, as in that case, the change "merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment." Retrospective application of such a statute creates a problem only if that application operates unfairly against a litigant who justifyably acted in reliance on some provision of the prior law. It is difficult to imagine such a case insofar as section 17(1)(b) is concerned. Only if jurisdiction in a case such as this is regarded as founded on a bargain between the State and the nonresident, whereby consent to be sued here is given as the price of a privilege conferred, can it be thought that the exercise of jurisdiction is unfair because the consent occurred before the terms of the bargain were known. For reasons that will be stated, we are satisfied that jurisdiction does not rest upon such a fictional consent.

Defendant's main contention is that the amended sections deny him due process of law, and so violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois. Since *Pennoyer* v. *Neff,* 95 U.S. 714, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fair-

ness in the determination of what constitutes jurisdiction to determine personal rights. Mr. Justice Holmes's observation, "The foundation of jurisdiction is physical power, * * *" (*McDonald* v. *Mabee*, 243 U.S. 90, 91 (1917),) can no longer be read restrictively. The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not "mechanical or quantitative" (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 (1945),) but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense.

The change that has occurred is made most manifest by the decision in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). There the court said: "Historically the juridiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. (*Pennoyer* v. *Neff*, 95 U.S. 714, 733.) But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (326 U.S. at 316.) The court added that the demands of due process "may be met by such contacts of [the defendant] with the state of the forum as make it reasonable, in the context of our federal system of govern-

ment, to require the [defendant] to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the [defendant] from a trial away from its 'home' or principal place of business is relevant in this connection." (326 U.S. at 317.) While the precise question related to the jurisdiction of the courts of the State over a foreign corporation, it is clear that the general principle underlying the decision applies equally to jurisdiction over nonresident individuals.

The question before us is not materially different from that which was settled more than a generation ago with respect to statutes providing for substituted service on nonresident motorists who caused injury within a State. The advent of the automobile and the rapid extension of its use had underscored the problem of the nonresident who enters the State, causes injuries, and withdraws to the relative sanctuary of his residence beyond the State's borders. In such circumstances the application of old, rigorous concepts of "due process of law" to shield the defendant from the process of the courts of the State where the accident occurred actually resulted in injustice to the persons injured. In many cases redress for the injury, obtainable only in a foreign court at considerable expense and under substantial handicaps, was a practical impossibility. In the light of this situation, there was no injustice to the nonresident in a requirement that he return, to make his defense, to the place to which he had come voluntarily—to the place in which the injury was inflicted. In the great majority of cases, because of the availability of witnesses, the applicability of local law, and other factors, that place was the most convenient forum for trial. It was inevitable that State legislatures should be aroused by the social problem thus created, and that they should take steps to make the nonresident motorist amenable to the process of local courts. It was equally inevitable that the courts would hold that statutes enacted in response to this need were valid exercises of the

police power, not in conflict with constitutional guaranties.

It was characteristic of our legal institutions, however, that the first approaches to a solution of the problem, both in the legislatures and in the courts, were made not in terms of a bold adjustment of legal concepts to a novel social problem, but in terms that purported to fit the new provisions into the established framework of jurisdictional concepts. The development progressed from actual consent to the exercise of jurisdiction by the appointment of an agent to accept service of process, (*Kane* v. *New Jersey*, 242 U.S. 160 (1916),) to a fictional consent implied from the use of the highways. *Hess* v. *Pawloski*, 274 U.S. 352 (1927).

But it is now clear that the true basis for jurisdiction of the nonresident motorist is something other than consent. In *Olberding* v. *Illinois Central Railroad Co*. 346 U.S. 338 (1953), the defendant Indiana motorist collided with the railroad's overpass in Kentucky. The Kentucky statute, like that of Massachusetts in *Hess* v. *Pawloski*, provided in substance that use of the highways was equivalent to the appointment of a State official as agent to accept service of process. The action was brought in a United States district court in Kentucky on the basis of diversity of citizenship. There was not the slightest doubt that the court had jurisdiction of the person of the Indiana defendant by service of process under the Kentucky statute. But the defendant moved for dismissal for improper venue, relying on the privilege afforded him by Federal statutes to insist that the action be brought only in a district in which the plaintiff or the defendant resides. This venue privilege can, of course, be waived; prior decisions had established that it is waived by the actual appointment of a process agent in the State where the action is brought. (*Neirbo Co*. v. *Bethlehem Shipbuilding Corp*. 308 U.S. 165 (1939).) And so the argument was that just as the defendant by using the highways of Kentucky had "consented" to be sued there for jurisdictional purposes, so he had "consented"

to be sued there for purposes of the Federal venue statute. The Supreme Court was not impressed. For the court, Mr. Justice Frankfurter said: "It is true that in order to ease the process by which new decisions are fitted into pre-existing modes of analysis there has been some fictive talk to the effect that the reason why a non-resident can be subjected to a state's jurisdiction is that the non-resident has 'impliedly' consented to be sued there. In point of fact, however, jurisdiction in these cases does not rest on consent at all. See Scott, Jurisdiction over Nonresident Motorists, 39 Harv. L. Rev. 563. The defendant may protest to high heaven his unwillingness to be sued and it avails him not. The liability rests on the inroad which the automobile has made on the decision of Pennoyer v. Neff, 95 U.S. 714, as it has on so many aspects of our social scene. The potentialities of damage by a motorist, in a population as mobile as ours, are such that those whom he injures must have opportunities of redress against him provided only that he is afforded an opportunity to defend himself. We have held that this is a fair rule of law as between a resident injured party (for whose protection these statutes are primarily intended) and a non-resident motorist, and that the requirements of due process are therefore met." 346 U.S. at 340-41.

The court held that there was no such consent as could be seriously treated as a waiver of the venue privilege. It followed that there was no such consent as could furnish a realistic justification for the jurisdiction of the court over the person of the defendant. The basis of jurisdiction was not consent; it was rather that the State was justified in making reasonable provision for redress in local courts against nonresident tortfeasors, so long as it provided reasonable notice and opportunity to be heard. *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945), similarly stamped as "legal fiction" the consent theory of jurisdiction over foreign corporations. To the same effect is

*Travelers Health Ass'n* v. *Virginia,* 339 U.S. 643, 647 (1950). (See Restatement, Judgments, § 23.) It serves no purpose, therefore, in the case before us, to consider whether the State of Illinois was in position to withhold from the defendant any privilege as the price of his "consent" to the exercise of jurisdiction.

Defendant relies on *Flexner* v. *Farson,* 248 U.S. 289 (1919), affirming 268 Ill. 435 (1915.) That decision had a brief career. The issue was the validity of a Kentucky judgment obtained against residents of Illinois. Service had been made on one who was thought to have been the agent of the defendant carrying on the business in Kentucky out of which the action arose. Mr. Justice Holmes, for the court, rejected the argument that the Kentucky statute exacted of those who carried on business activities in the State an implied consent to be sued. The analogy to the cases of foreign corporations was false, he said, because Kentucky had no such power to exclude citizens of another State from the privilege of doing business as it ·had with respect to foreign corporations. Thus the court held that the fiction of implied consent could not be stretched to cover the case of individuals carrying on business within the State; it did not inquire whether some other basis for the exercise of jurisdiction could be found.

When the problem next reached the Supreme Court, in *Henry L. Doherty & Co.* v. *Goodman,* 294 U.S. 623 (1935), that court affirmed the power of the Iowa courts to enter a personal judgment against nonresident individuals carrying on business within the State, and disposed of *Flexner* v. *Farson* with this sentence: "There the service was made upon one not then agent for the defendants; here the situation is different." (294 U.S. at 628.) True, there had been some question as to whether the person on whom process had been served in *Flexner* had ceased to be the agent of the defendants; but that question had been given no attention by this court. (268 Ill. 435 (1915).) And

although the contention was renewed in the Supreme Court of the United States, that court held the judgment void on grounds that obviously made it immaterial whether the supposed agency existed or not. When, therefore, the Supreme Court in the *Doherty case* "distinguished' *Flexner* v. *Farson* by reference to the agency point, it in effect overruled the prior decision. The view that jurisdiction could not be sustained was repudiated, but the argument that there was no basis for implied consent was not answered. The only reasonable construction to be put upon such a decision as *Doherty* is that while jurisdiction cannot be sustained on the basis of consent, it can be sustained on another basis. Clearly, as in the nonresident motorist cases that were relied on in the *Doherty case,* that other basis is to be found in the legitimate interest of the State in providing redress in its courts against persons who, having substantial contacts with the State, incur obligations to those entitled to the State's protection.

The social problems resulting from automobile accidents, or as in *Doherty* from the sale of securities, may be of greater magnitude than those resulting from other tortious conduct generally; but the determination that the degree of need is such as to call for remedy is to be made by the legislature and not by the courts. The rational basis of the decisions upholding the nonresident motorist statutes is broad enough to include the case in which the nonresident defendant causes injury without the intervention of any particular instrumentality. The legislature may direct its policy to the fact of injury as well as to its probability. Cf. *Watson* v. *Employers Liability Assurance Corp.* 348 U.S. 66 (1954).

Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause. (Cleary and Seder, Extended Jurisdictional Bases, 50 N.U.L.R. 599; O'Connor and Goff, Expanded Con-

cepts of State Jurisdiction, 31 N.D. Law 223.) They are not the first provisions to be framed in the light of a pragmatic view of jurisdiction. A Vermont statute (Vt. Stat. (1947) sec. 1562) provides for jurisdiction over any foreign corporation which "makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or * * * commits a tort in whole or in part in Vermont against a resident of Vermont." The validity of the statute was upheld in *Smyth* v. *Twin State Improvement Corp.* 116 Vt. 569, 80 A.2d 664 (1951). Jurisdiction, as here, was based upon the commission of a single tort within the State. A Maryland statute (Md. Code (1951) art. 23, sec. 88(d)) subjects foreign corporations to the jurisdiction of the courts of the State in "any cause of action arising out of a contract made within this State or liability incurred for acts done within this State, whether or not such foreign corporation is doing or has done business in this State." The statute was upheld in *Johns* v. *Bay State Abrasive Products Co.* 89 F. Supp. 654 (D. Md. 1950) in its application to the commission of a tortious act within the State. The act consisted of a negligent misrepresentation of the suitability of a grinding wheel for use with a particular machine.

Even though a sound basis exists for the exercise of jurisdiction *in personam,* the implementing statute must, of course, provide a mode of service which is reasonably calculated to apprise the defendant of the claim against him. Sections 16 and 17 provide that service is to be made on the defendant personally. As the joint committee that drafted the amendments stated, "There would seem to be no better notice than a summons personally served on a defendant." Smith-Hurd, Ill. Ann. Stat., chap. 110, sec. 17, p. 165.

The defendant sent his employee into Illinois in the advancement of his own interests. While he was here, the employee and the defendant enjoyed the benefit and protec-

tion of the laws of Illinois, including the right to resort to our courts. In the course of his stay here the employee performed acts that gave rise to an injury. The law of Illinois will govern the substantive rights and duties stemming from the incident. Witnesses, other than the defendant's employee, are likely to be found here, and not in Wisconsin. In such circumstances, it is not unreasonable to require the defendant to make his defense here. If, in a particular case, trial in an Illinois court will be unduly burdensome to the nonresident defendant, the doctrine of *forum non conveniens* is available. (*Whitney* v. *Madden,* 400 Ill. 185, 79 N.E.2d 593 (1948).) Moreover, the nonresident defendant will in many cases have the privilege of removal to a Federal court (28 U.S.C., sec. 1441), in which case, after removal, a motion will lie under 28 U.S.C., sec. 1404(a) for transfer to a more convenient district. (*Norwood* v. *Kirkpatrick,* 349 U.S. 29 (1955).) We hold that the requirements of due process of law have been met.

Defendant's final contention is that section 17 discriminates against nonresidents and in favor of residents of the State. The argument is based upon the allocation of the burden of proof, and as we understand it the contention is that a resident defendant may put the plaintiff to his proof on the issue of liability, while a nonresident defendant, appearing specially to contest the jurisdiction of the court, must assume the burden of disproving liability in order to defeat jurisdiction.

The argument is founded on the assumption that the issue upon a special appearance to contest jurisdiction under section 17(1)(b) is whether upon the facts the defendant is liable to the plaintiff as a matter of substantive law. In other words, the assumption is that there is no jurisdiction unless all of the elements that combine to spell ultimate liability in tort are present. We reject that assumption.

The jurisdictional fact, in the language of section 17(1)(b), is "the commission of a tortious act within this

State." The word "tortious" can, of course, be used to describe conduct that subjects the actor to tort liability. For its own purposes the Restatement so uses it. (Restatement, Torts, § 6.) It does not follow, however, that the word must have that meaning in a statute that is concerned with jurisdictional limits. To so hold would be to make the jurisdiction of the court depend upon the outcome of a trial on the merits. There is no indication that the General Assembly intended a result so unusual. The essential question in cases of this type is where the action is to be tried. Once it has been determined that the relationship of the defendant to the State is sufficient to warrant trial here, we are of the opinion that the court has jurisdiction to determine the merits of the controversy, and that its jurisdiction will not be destroyed by its exercise.

The construction assumed by the defendant's argument would produce anomalous results. It would mean, in the first place, that upon every special appearance the court would be required to conduct a preliminary trial on the merits as to negligence, contributory negligence and all other elements of liability. And if, upon that preliminary hearing the court should find liability for jurisdictional purposes, it would nevertheless be necessary to retry all the issues relating to liability in order to determine the merits of the case, because "No determination of any issue of fact in connection with the objection [to jurisdiction] is a determination of the merits of the case or any aspect thereof." Civil Practice Act, sec. 20(2); Ill. Rev. Stat. 1955, chap. 110, par. 20.

Moreover, the assumed construction could cast an unfair burden upon defendants under the provisions of section 17(1)(b). A dismissal for want of jurisdiction, after a finding on the preliminary hearing that liability in tort had not been established, might not protect the nonresident defendant from a subsequent suit on the same cause of action in his home State, because under section 20(2) the judg-

ment of dismissal will not determine the merits. (Cf. Restatement, Judgments, § 49.) Thus the defendant who successfully litigated the issue of liability for jurisdictional purposes in our courts might be subjected to a second trial of the issue on the merits in the courts of another State.

Finally, such a construction would materially impair the protection which the General Assembly clearly sought to provide for residents of the State by the enactment of section 17. The substantial objective of the new jurisdictional provisions is to enable the plaintiff to obtain a trial of the issues of liability and of damages in this State, when the circumstances make it the appropriate and convenient forum for that purpose. Under the suggested construction, however, the nonresident defendant, merely by defaulting, could force trial of the issue of liability in his own State, under the guise of a trial of the jurisdictional facts. We think that the General Assembly did not intend that the jurisdiction conferred by section 17(1)(b) could be frustrated by a disregarding of the court's process.

It is unnecessary to interpret section 17(1)(b) as conferring jurisdiction only where the defendant's conduct in the State gives rise to liability to the plaintiff in tort. A similar question was considered by the Vermont court in *Smyth* v. *Twin Cities Improvement Corp.* 116 Vt. 569, 80 A.2d 664 (1951). The statute there involved confers jurisdiction if the defendant "commits a tort" within the State. The trial court had dismissed the action on the ground that the complaint did not allege the requisite jurisdictional facts. The Supreme Court of Vermont reversed, finding that the complaint was sufficient to state a cause of action in tort. Clearly, the Vermont court was of the opinion that the jurisdictional requirements of such a statute are met when the defendant, personally or through an agent, is the author of acts or omissions within the State, and when the complaint states a cause of action in tort arising from such conduct. We adopt that view. An act

or omission within the State, in person or by an agent, is a sufficient basis for the exercise of jurisdiction to determine whether or not the act or omission gives rise to liability in tort. We are not called upon in this case to consider what disposition should be made of a case in which the complaint is subject to dismissal for failure to state a cause of action as a matter of substantive law. Cf. *Bell* v. *Hood*, 327 U.S. 678.

Since ultimate liability in tort is not a jurisdictional fact under section 17(1)(b), it follows that there is no substance in the contention that the nonresident defendant is discriminated against by the assignment of the burden of proof on that issue. Moreover, to the extent that issues common to the merits and the jurisdictional question may be determined preliminarily by the court for purposes of a motion to quash, the determination will of course not be conclusive on the merits. (Civil Practice Act, sec. 20(2); cf. section 8(3) and *Dever* v. *Bowers*, 341 Ill. App. 444, 94 N.E.2d 518 (1950).) Thus the defendant on special appearance may deny that there was any act or omission in the State on his part, or he may deny that the person whose conduct within the State is complained of was his agent or servant. The preliminary ruling on these issues of jurisdictional fact will not be determinative of the same issues when or if they arise on the merits. There is no substance, then, in any contention that section 17 unfairly shifts the burden of proof to the nonresident defendant.

The argument reduces to the obvious assertion that minor differences in procedure are necessarily involved when a statute undertakes to subject nonresidents to the same obligations that are borne by residents. Of course, jurisdiction must be predicated on different facts, and so the issues open on a motion to quash service of process will necessarily be different. As the Supreme Court said of the statute involved in *Hess* v. *Pawloski:* "It makes no hostile discrimination against nonresidents, but tends to put

them on the same footing as residents. Literal and precise equality in respect of this matter is not attainable; it is not required." 274 U.S. at 356.

Inasmuch as the trial court quashed the service of summons in this case, the judgment is reversed and the cause is remanded to the circuit court of Winnebago County, with directions to deny the motion to quash and for further proceedings in conformity with this opinion.

*Reversed and remanded, with directions.*