STATE of Missouri ex rel. DEERE AND COMPANY, a Delaware Corporation, and John Deere Company of Moline, an Illinois Corporation, Relators,

v.

Honorable William H. PINNELL, Judge, Respondent.

No. 54486.

Supreme Court of Missouri, En Banc.

June 8, 1970.

———◆———

Haseltine & Springer, Horace S. Haseltine, Gregory K. Johnson, Springfield, for defendants-relators, Deere & Co., a Delaware corp., and John Deere of Moline, an Illinois corp.

Bob J. Keeter, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for respondent.

MORGAN, Judge.

In this original proceeding, relators ask that we prohibit respondent circuit judge from acting in a manner alleged to be in excess of his jurisdiction. The challenge, specifically, is directed toward the court's order that relators answer certain interrogatories, but it is based on relators' assertion that the "single act" long-arm statutes of this state are unconstitutional. Sections 351.633 and 506.500, RSMo 1959, V.A.M.S.

Relators, two foreign corporations unlicensed in this state, were, with others, named as defendants in a suit filed in Barry County for damages resulting from personal injuries suffered by plaintiff. The petition alleged that plaintiff owned a 1956 Model 420 John Deere tractor; that he purchased from a local implement dealer a fuel tank cap, part number AF2914R, for said tractor; that neither the gas tank nor cap were vented; that on the first occasion he used the tractor with the new fuel tank cap, gasoline was thrown on him causing severe burns and permanent disabling injuries. In addition to the local dealer, two corporations licensed in this state under names including the words "John Deere," as well as the two relators, were named as defendants. It was alleged that relator, Deere and Company, a Delaware corporation, was the parent company with all but the local dealer being controlled subsidiary corporations. In Count I, allegations were made that relators were engaged in the manufacture, design, testing, distribution, sale and servicing of John Deere tractors and parts, and while so doing used "national channels of commerce" for distribution; that defendants placed such equipment on the market when "said tractor and fuel tank cap were not reasonably fit for the general purpose for which they were designed * * * and were in a defective, unsafe and imminently dangerous condition"; that plaintiff was using said products in a manner which was reasonably foreseeable; and, that such defects were the proximate cause of the injuries suffered. See Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362, 364, wherein this court declared: "We now adopt the rule of strict liability in tort stated in 2 Restatement, Law of Torts, Second, § 402A * * *." In Count II, on a theory of negligence, it was alleged that the corporate defendants were negligent in manufacturing and distributing a tractor without a "vented" gas tank and designing and selling "unvented" fuel tank caps; and further, that they negligently failed to warn implement dealers of this fact. Counts III

and IV by the wife for loss of consortium were premised, respectively, on the same theories.

In an apparent effort to act with an abundance of caution, plaintiff obtained service of process as provided both by Section 351.633 and 506.510 (the latter detailing the manner of service for actions under Section 506.500). Relators filed their motion to quash service. Necessarily, we look to the relevant portions of each statutory provision.

Section 351.633, enacted Laws 1965, S.B. No. 106, provides: "If a foreign corporation commits a tort, excepting libel and slander, in whole or in part in Missouri against a resident or nonresident of Missouri, such act shall be deemed to be doing business in Missouri by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of state of Missouri and his successors to be its agent and representative to accept service of any process in any actions or proceedings against the foreign corporation arising from or growing out of the tort * * *." Provision is then made for the secretary of state to notify the foreign corporation of any service of process. This section and its predecessors (Sections 351.630 and 355.375) have been considered in State ex rel. Clay Equipment Corp. v. Jensen, Mo., 363 S.W.2d 666; State ex rel. Pressner & Co. v. Scott, Mo., 387 S.W.2d 539; and Jackman v. Century Brick Corp. of America, Mo., 412 S.W.2d 111. See 31 University of Kansas City Law Review 292. The mere reading of this statutory provision makes it clearly evident that it was the legislative purpose to extend the jurisdiction of the courts of this state over an unlicensed foreign corporation when it committed a tort "in whole or in part" in Missouri. By the later enactment of Section 506.500, in 1967, a comparable jurisdictional concept was extended to include individuals and other entities. It declares: "Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a *tortious act* within this state (emphasis added); (4) The ownership, use, or possession of any real estate situated in this state; (5) The contracting to insure any person, property or risk located within this state at the time of contracting." Section 506.510 authorizes personal service of process upon the defendant "outside this state." When circumstances are such that Section 506.500 is applicable and service has been had as provided in Section 506.510, Section 506.520 provides, "the court shall have the power to render a personal judgment against such person, firm, or corporation." These latter statutes have been considered in Adams Dairy Co. v. National Dairy Products Corp. (WD Mo.), 293 F.Supp. 1164; State ex rel. Nichols v. Fuller, Mo. App., 449 S.W.2d 11; and Scheidegger v. Greene, Mo., 451 S.W.2d 135. See 33 Missouri Law Review 248.

Both Sections 351.633 and 506.500 are applicable to an unlicensed foreign corporation, but in addition to noting the different mechanics of service allowed, it would be timely to point out that Section 351.633 predicates jurisdiction on the commission of a tort, except libel and slander, in "whole or in part" in Missouri, whereas Section 506.500, subparagraph (3), calls for the commission of a "tortious act" within this state. In view of the fact plaintiff complied with the service provisions of both sections, we need not ascertain, what, if any, significance might be attached to the varied terminology used.

We recognized in Scheidegger v. Greene, supra, that Section 506.500, and related sections, were adopted by the legislature of

this state with not only an awareness of their similarity to comparable provisions of the statutory law of Illinois, but with the designed purpose of extending the jurisdiction of the courts of Missouri to comparable limits. "Senate Bill 130 (now Sec. 506.500) is another effort to overcome any constitutional objections to broadening our laws for the service of process and taking personal judgments against nonresidents * * * This law was represented as being virtually identical to a similar law adopted by the State of Illinois which, it is said, has been held to be constitutional." Senate Majority Leader William B. Waters, 23 J.Mo.Bar at 455. That the latter observation was well founded is evident from the conclusions expressed by Justice Schaefer for the Supreme Court of Illinois in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, at 676: "Defendant's main contention is that the amended sections deny him due process of law, and so violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois, S.H.A. Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. Mr. Justice Holmes's observation, 'The foundation of jurisdiction is physical power, * * *.' McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, can no longer be read restrictively. The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (International Shoe Co. v. Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95,) but are to be found only in the requirement that provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense." Factually, only the commission of a single tort in Illinois by the nonresident defendant was shown, but the challenge to the jurisdiction of the Illinois trial court was denied.

The constitutional validity of the "single-act" long-arm statute of Illinois, as determined in Nelson v. Miller, supra, was reaffirmed by that court in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761, and, after considering facts somewhat similar to the instant case, it was concluded, loc. cit. 766: "As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States."

We previously considered the rationale of the construction placed on such statutes by the courts of Illinois when we approved the registration in Missouri of a judgment obtained there under the long-arm statutes. Slivka v. Hackley, Mo., 418 S.W.2d 89.

In concluding our effort to determine the legislative intent of the General Assembly of Missouri, we are convinced that the ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

What precise federal constitutional limitations there presently may be on

the application of this jurisdictional concept rests in the interpretation placed thereon by the Supreme Court of the United States. Since Pennoyer v. Neff, 95 U.S. 714, this question has been the subject of innumerable judicial decisions and exhaustive academic writings, but "* * * just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations." McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 200, 2 L.Ed.2d 223. In McGee (loc. cit. 222, 78 S.Ct. 200) the court recognized that, "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." More specifically, "* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154. See Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283.

Further, relators present the argument that the questioned statutes are unconstitutionally vague and burdensome. With an approach somewhat remindful of the continuing debate as to whether the "chicken or egg" came first, it is submitted that: "The statute, however, by its own terminology, predicates jurisdiction upon the termination of the ultimate fact in issue, i. e., the commission of a tort. It does not provide for summary disposition of the issue of jurisdiction short of a full-blown hearing on the major issue of the lawsuit, i. e., the commission of a tort." This argument was also presented in Nelson v. Miller, supra, wherein the court said, loc. cit. 143 N. E.2d 680: "In other words, the assumption is that there is no jurisdiction unless all of the elements that combine to spell ultimate liability in tort are present. We reject that

assumption." We agree, and point out that the hearing on the motion to quash will be limited to an evaluation of relators' contacts with this state and a prima facie showing that acts contemplated by the statutes involved took place. Certainly a trial on the merits is not required, which, among others, might include questions of negligence, contributory negligence, contributory fault, causation and the extent of damages suffered from the injuries alleged.

Finding that Sections 351.633 and 506.500 do not offend the constitution of Missouri, and that conceivably "minimum contacts," within the context of the cited opinions of the Supreme Court, might arise from the commission of a tortious act in whole or in part in Missouri, we conclude that both statutory provisions are constitutional.

Fortunately, other arguments of relators can be disposed of in a more summary manner.

■ The contention that neither section is applicable to the date of injury in 1963 can not be sustained. As to Section 351.-633, in Jackman v. Century Brick Corp. of America, supra, we held, loc. cit. 412 S.W. 2d 116: "* * * we are required to treat the single tort statute as having been part of our statutes from October 13, 1961." Section 506.500 was found to be retroactive in Scheidegger v. Greene, supra.

■■ As to the argument that plaintiff can not establish the required jurisdictional "minimum contacts," we can only say that this issue must in the first instance be determined by the trial court. At the hearing on relators' motion to quash service of process, the presence or absence of such contacts with this state in so far as they are consistent with "traditional notions of fair play and substantial justice" must be resolved. Without repeating the allegations of the petition, it is adequate for us to declare that they are, if true, sufficient to establish the jurisdiction of the trial court to proceed.

**894**

■ Finally, we reach the specific issue submitted, i. e., whether or not relators may be compelled to answer interrogatories concerning their contacts with the state of Missouri, and the business they do in this state, before the trial court rules on relators' motion challenging the court's jurisdiction. Our Rule of Civil Procedure No. 56.01, providing for discovery by interrogatories, was adopted from the federal rules, and the findings in the many cases pertaining thereto are summarized in Moore's Federal Practice, Vol. 4, Sec. 33.16, p. 2341 as follows: "Despite a few early cases to the contrary, it is clear that interrogatories may be used to inquire into facts relating to jurisdiction of the Court over the person of the defendant, jurisdiction over the subject matter of the controversy, jurisdiction over property, or facts relating to venue."

■ One further question remains— should the scope of the subject matter covered by the interrogatories be limited to the jurisdictional issues? We believe it proper that they be so limited. If relators are found to be proper defendants for the trial of the cause on its merits, plaintiffs can submit further interrogatories relative to other issues. If relators are not found amenable, the burden cast upon them will have been held to a minimum, and such a procedure would be more consistent with the standards of "fair play and substantial justice," which, although subjective, are a vital part of the jurisdictional issue created. As to determining whether or not the interrogatories reflected by the record are so limited, we refer to our recent holding in State ex rel. Norfolk and Western Railroad Co. v. Dowd, Mo., 448 S.W.2d 1.

Our preliminary writ heretofore issued is vacated.

All concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.