STATE of Missouri ex rel. the BANK OF GERING, Relator,

v.

Honorable Fred E. SCHOENLAUB, Judge of the Circuit Court of Buchanan County, Respondent.

No. 59214.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1976.

Edward P. Speiser, Miner, Martin & Speiser, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, for relator.

Theodore M. Kranitz, Kranitz & Kranitz, St. Joseph, for respondent.

HOLMAN, Judge.

This is an original proceeding in prohibition in which relator seeks to prevent respondent judge from proceeding further against it in the case of *Joe M. Lyle, plaintiff, vs. The American National Bank and the Bank of Gering, defendants.* Before seeking relief here relator, Bank of Gering, filed a special entry of appearance contesting the jurisdiction of the court over it and moved to quash the summons. A hearing was held at which evidence was heard and said motion overruled. Upon petition of relator we issued our provisional rule. We have decided that said rule should be made absolute.

The question presented is whether relator, a Nebraska banking corporation, served with process in Nebraska, is amenable, within the limitations of the due process clauses of the State and Federal Constitutions, to in personam jurisdiction of a Missouri court by reason of the factual situation hereinafter stated.

Plaintiff contends that the Buchanan County Circuit Court has jurisdiction by reason of Section 506.500, RSMo 1969, V.A. M.S., which reads, in part, as follows:

"1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

"(1) The transaction of any business within this state;

"(2) The making of any contract within this state;

"(3) The commission of a tortious act within this state; . . ."

Rule 54.06 is substantially the same as the above statute.

In the month of February, 1973, Lyle entered into a number of business transactions with Tige Enterprises of Gering, Nebraska. As a result thereof Lyle drew a number of drafts upon American National Bank, St. Joseph, Missouri, payable from the account of Tige at Bank of Gering. These drafts were deposited for collection in American National which transmitted

them to relator. According to an official of relator the procedure it followed was that, "We entered the draft in our collection department under an accountability number and then notified Tige Enterprises that the drafts were there and requested his acceptance or non-acceptance of the drafts. If he accepted them, they were paid immediately. If they were not accepted, they were sent back." According to this witness, however, "On about the 7th of February, Berta's [owner of Tige] fortunes seemed to evaporate. He became impossible to contact; his account balance at the bank was drawn to virtually nothing." A number of the drafts were accepted and paid and some were returned to American National. The basis of Lyle's claim for relief is the contention that relator negligently failed to notify American National and Lyle within a reasonable time that some of the drafts had not been honored, thus precluding Lyle from recovering cattle he had sold to Tige.

The evidence as to relator's contacts or lack of contacts with Missouri was given in detail. There was testimony that relator (1) was not registered to do business in Missouri, (2) held no real estate in Missouri, (3) owned no personal property in this state, (4) held no mortgages on Missouri property, (5) had no agents in Missouri, (6) had no accounts in this state, (7) never extended credit or collected debts in Missouri, (8) never loaned money to a Missouri resident, (9) never advertised or solicited the sale of bank stocks in this state, (10) does not hold any stock in Missouri corporations, (11) has never leased property, held meetings, maintained any office or entered into contracts in this state. All of the testimony simply adds up to the conclusion that relator did not do any business in the State of Missouri and had no contacts with Missouri people or corporations except in the conduct of normal banking operations. As in this case, it does pay drafts drawn on the account of its customers (if accepted) sent to it by Missouri banks. We think it may be assumed that it collects on checks cashed at its bank and drawn on accounts in Missouri banks and honors checks of its customers that may be cashed at Missouri banks all according to usual bank clearing practices.

To a great extent the briefs of the parties cite the same cases. We will consider the principles announced in those cases and endeavor to apply them to the instant factual situation.

The early case of *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877) stated the strict rule that a valid in personam judgment against a nonresident must be based upon service of process within the state or defendant's voluntary appearance. Since that decision great changes have occurred in transportation and in the field of business generally resulting in more liberal rules. In *State ex rel. Deere and Company v. Pinnell,* 454 S.W.2d 889, 893 (Mo.1970) we quoted with approval that, " 'Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.' More specifically, ' * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154 [90 L.Ed. 95]."

In the *International Shoe* case, supra, the nonresident corporation did not have an office in the forum state but employed twelve salesmen to sell its shoes there. The salesmen were paid on a commission basis and the orders were approved or rejected by officials in the company office in St. Louis, Missouri. The shoes were shipped from factories located in other states to purchasers in Washington. Service was had by service upon a salesman within the state and registered mail service upon the company at its home office in Missouri. In holding that the suit could be maintained the court stated that, "Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were

systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there." 326 U.S. 319, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

Another principal case is *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Therein, a woman executed in Delaware a revocable deed of trust making a Delaware trust company trustee of certain securities, reserving the income for life and providing that the remainder should be paid to such parties as she should appoint by *inter vivos* or testamentary instrument. Later, after becoming domiciled in Florida, where she remained until her death, she executed (1) an *inter vivos* instrument appointing certain beneficiaries to receive $400,000 of the trust property, and (2) a will containing a residuary clause covering, *inter alia,* "all property, rights and interest over which I may have power of appointment which prior to my death has not been effectively exercised." A suit was filed in Florida to determine the validity of the power of appointment. The nonresident trust company was made a party and served by mail and publication. In holding that the Florida court had no in personam jurisdiction over the trust company the court stated that, "As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have

evolved from the rigid rule of *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co. Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95.

"We fail to find such contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. . . .

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." 357 U.S. 250, 251, 78 S.Ct. 1228, 1238.

A case which construes the Missouri statute in question is *Fulton v. Chicago, Rock Island & Pacific Railroad Co.* (8th Cir.) 481 F.2d 326 (1973). In that case damages were sought from a number of railroads. The initiating carrier did not do business in Missouri. It was alleged that it negligently loaded the shipment which caused a derailment and damage to plaintiff's equipment which occurred in Missouri. It was held that said carrier could be sued in Missouri under the provisions of Section 506.500, supra. *Fulton* relied on cases such as *State ex rel. Apco Oil Corporation v. Turpin,* 490 S.W.2d 400 (Mo.App.1973) which held that our long-arm statute permitted suit against a nonresident manufacturer whose defec-

tive product was sold in Missouri and caused damage to the purchaser.

Other cases cited include *State ex rel. Birdsboro Corporation v. Kimberlin,* 461 S.W.2d 292 (Mo.App.1970) and *Southern Machine Company v. Mohasco Industries, Inc.* (6th Cir.) 401 F.2d 374 (1968).

■ We have concluded that relator has not transacted any business or made any contract or committed any tortious act within this state. It seems to us that everything relator did concerning these transactions was done in the State of Nebraska. Certainly the returning of a draft or the proceeds thereof by mail to American National would not constitute doing business in this state. Therefore, the only possible basis for ruling that the circuit court has jurisdiction to proceed against relator is the contention that relator retained a draft for an unreasonable time without giving notice that it was unpaid thus allegedly causing Lyle to sustain damage in this state. In advancing that contention respondent relies on *Birdsboro, Fulton* and *Mohasco.* In our view those cases are clearly distinguishable from the one before us.

*Birdsboro* is a product liability case wherein it was held that a nonresident manufacturer could be sued in Missouri because it manufactured a defective product knowing that it would be sent into Missouri and after it arrived the purchaser sustained damage. Likewise in *Fulton* the negligence occurred outstate but the defendant knew the instrumentality involved would be brought into Missouri where it caused damage to the owner. In *Mohasco* a nonresident defendant was held to be subject to suit in Tennessee where it had entered into a licensing agreement for the plaintiff to manufacture and sell certain machines and knew that some of the machines would be sold in Tennessee. These cases go a long way in sustaining in personam jurisdiction of nonresident defendants but not as far as we are asked to go in the case at bar. In this case, if we consider the draft to be the instrumentality involved, the alleged damage to Lyle occurred while the draft was being held in Gering, Nebraska. Nothing

further happened after it was returned to Missouri which caused damage to him. Moreover, there is nothing to indicate that relator purposely availed itself of the privilege of conducting activities in this state. The business involving the drafts was not solicited but came to it in the usual course of banking business. We cannot believe that the legislature in enacting Section 506.500 intended that it would apply to the factual situation before us. To do so would mean that a nonresident bank could be sued in Missouri for acts wholly performed in the state of its residence in the usual course of conducting its banking business.

It is our further view that the tenuous contacts which relator had with Missouri were not sufficient to meet the "minimum contacts" requirement necessary to comply with constitutional due process as specified in the cases heretofore discussed.

■ Respondent also contends that relator has made a general appearance and for that reason is subject to Missouri jurisdiction. There is no merit in that contention. After we issued our provisional rule respondent filed a motion to modify it because it applied to Count II of the petition which did not concern relator. We ordered modification. Thereafter, relator filed a motion to set aside that modification order for reasons stated therein. It is that motion which respondent says was a general appearance. We rule that said motion was a part of the orderly procedure involved in this prohibition matter and did not constitute an entry of appearance in the underlying circuit court case. The motion to quash the provisional rule filed in this connection and ordered taken with the case is overruled.

The provisional rule is made absolute.

MORGAN, HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent.

The question is whether Bank of Gering transacted any business or made any contact in Missouri. According to a Gering Bank officer's testimony, Bank of Gering received the first of the drafts referred to in the principal opinion at about the end of January 1973 together with a transit letter from American National Bank of St. Joseph, Missouri. *Over the next three months, Bank of Gering received drafts and transit letters totaling 25 to 30 in number.* When the Bank of Gering received a draft, it was entered in its collection department under an accountability number and then notified Tige Enterprises that the drafts were there and requested Tige's acceptance or nonacceptance of the drafts. If Tige accepted them, they were paid immediately. If they were not accepted, they were sent back. *About 22 drafts were paid and approximately 6 were not paid.* The account of Tige Enterprises had been extremely liquid and on February 7, 1973, dropped to virtually nothing. The Gering Bank official testified that, to the best of his recollection, drafts which were dishonored were sent back to American National Bank on the next business day, but this is in dispute.

According to Clay & Co., Clay & Co. was required to reimburse American National Bank for advancements made to Clay on drafts which were not paid and for which Clay & Co. sued American National Bank and Bank of Gering in the underlying cause of action.

A group of six drafts, two dated 2–2–73 and four dated 2–5–73, totaling $55,257.09, which were deposited for collection by American National Bank under Clay's deposit account card with American National Bank, were forwarded to Gering by transmittal letter and received by Bank of Gering on 2–7–73. These drafts are referred to by the parties as "Group A". According to the testimony of an official of American National Bank, notification of nonacceptance by Gering Bank as to Group A drafts was not received until March 5, 1973.

In *State ex rel. Deere and Company v. Pinnell,* 454 S.W.2d 889 (Mo. banc 1970), the court construed, inter alia, section 506.500 and noted that the Missouri long-arm acts were patterned after similar Illinois laws, and the court utilized *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957), as authority for the scope of the Missouri statutes. This court in *Deere* held at 892: "In concluding our effort to determine the legislative intent of the General Assembly of Missouri, we are convinced that the ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States."

In *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), the court held that it was not necessary for the defendant to be present in the forum state in order to be subject to long-arm service and in personam jurisdiction. In *Gray* the defendant manufactured a defective valve in Ohio which was used by another foreign corporation on a heater which, in turn, was sold to Gray and exploded in Illinois causing injury in that state. *Gray* presented a factual situation very similar to our case of *Deere* which cited *Gray* as authority for upholding long-arm service upon a defendant. Nor is the nonresident defendant's presence in the forum state required when jurisdiction is premised on "the transaction of any business within [the] State." *Ziegler v. Houghton Mifflin Co.,* 80 Ill.App.2d 210, 224 N.E.2d 12 (1967).

In the instant case the drafts were sent directly to the Bank of Gering by the American National Bank of St. Joseph, Missouri, with written instructions as follows: "We enclose for collection and immediate returns, items as listed below. Protest all items over $500.00 unless marked x or items stamped 'no pro. 36–3' (or similar authority of a preceding endorser). Wire non-payment of items of $1000.00 and over, except those not paid because of missing, irregular or unsatisfactory endorsement." In each

instance Bank of Gering undertook collection of the item by attempting to obtain acceptance or nonacceptance from its depositor, Tige Enterprises. Each item was recorded by Bank of Gering in its records which records show the name and address of the party sending the item (The American National Bank, 6th & Francis Streets, St. Joseph, Mo. 64502); the type of item (customer drafts); the drawer (Tige Enterprises, Inc., signed by Mary Kay Hughes, payable to John Clay & Co.); "on whom drawn" (Tige Enterprises, Inc., P. O. Box 277, Gering, Nebraska, 69341); the amount of the draft; date received; and "date due" (within 24 hours). A vice-president and cashier of the Bank of Gering testified that the handling of the drafts between Tige Enterprises and John Clay & Co. was done under his supervision and he had personal knowledge of the transactions.

The Bank of Gering accepted the drafts for collection and as such became a collecting bank, section 400.4–105(d), RSMo 1969, and Code Comment at Vol. 20B, V.A.M.S., p. 318, and the agent or subagent of the American National Bank, section 400.4–201(1). The acceptance of the drafts by Bank of Gering for collection constitutes a contract for collection. See Patton's Digest of Legal Opinions, Vol. 11, p. 1250, sec. 1:6, and cases cited therein. There had been a prior course of dealings between Bank of Gering and American National Bank in that about 22 similar drafts had been forwarded by American National to Bank of Gering for collection and were collected by it with remittance to American National Bank in St. Joseph. Certainly a bank is held to the knowledge that, if it fails to perform the duties of a collecting bank with reference to presentment of the draft to the party upon whom the draft is drawn (Tige Enterprises) and to give timely notice of dishonor to its principal (American National Bank), injury and damage may or will occur to the party entitled to receive the proceeds and that such damage, if any, will occur in Missouri.

Indeed, the provisions of the U.C.C. of Missouri and Nebraska which, in effect, codified the customs and practices of banks with reference to collections prior to the adoption of the U.C.C. itself existed because it has always been known that damage will probably occur unless prompt notice of dishonor is given by the collecting bank. See Zollmann, Banks and Banking, Vol. 10, p. 555. And there is no denying that the handling of drafts for collection is part of the regular course of business of a bank.

It would be difficult to describe the course of dealings between the Bank of Gering and the American National Bank as anything other than the doing of business between the two. Nor can it be said that the business was done *only* in Missouri or *only* in Nebraska. Here the transactions required the doing of acts in Missouri and Nebraska. The very nature of the Bank of Gering's obligations required that it transmit remittances or notices into Missouri pursuant to its agency relationship with the Missouri bank which relationship came into being by the voluntary acts of the Bank of Gering in accepting the drafts for collection.

The requirement of minimal contacts with the forum state is satisfied under *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state." Here, the Bank of Gering purposefully availed itself of the privilege of conducting business activities with the American National Bank in Missouri, which activities had to be performed, in part, in Missouri in order for the business transactions undertaken to be completed. Bank of Gering had to deliver remittances or notices of dishonor into Missouri and it knew that the damage resulting from a failure to exercise ordinary care or failing to comply with the pertinent provisions of the U.C.C. would occur in Missouri.

I believe the acts of the Bank of Gering constituted the transaction of some business in Missouri and would hold those acts sufficient to satisfy the due process requirements of minimum contact required by the Fourteenth Amendment, United States Constitution, under *Hanson v. Denckla, su-*

*pra,* and the due process clause of Art. I, sec. 10, Mo.Const.

I think it is of some significance that the principal opinion states that "All of the testimony simply adds up to the conclusion that relator did not do any business in the State of Missouri and had no contacts with Missouri people or corporations except in the conduct of *normal banking operations.*" (Emphasis mine.)

It seems to me when the normal business operations of a bank involve transactions and the making of contracts with Missouri residents that this certainly satisfies the requirements of section 506.500 so as to subject the nonresident bank to the jurisdiction of the Missouri courts.

For the foregoing reasons I believe our provisional rule in prohibition heretofore issued should be quashed and therefore I dissent.