KACIAN ET AL., APPELLEES, v. THE ILLES CONSTRUCTION
CO., APPELLANT; FRUSCELLO ET AL., APPELLEES.

[Cite as Kacian v. Illes Constr. Co. (1970),
24 Ohio App. 2d 43.]

(No. 29684—Decided November 5, 1970.)

*Messrs. Jamison, Ulrich, Johnson, Burkhalter & Hesser,* for appellant Illes Construction Co.

*Messrs. Payne & Payne,* for plaintiffs-appellee.

*Messrs. Spieth, Bell, McCurdy & Newell,* for defendants-appellees.

ARTL, P. J.* This is an appeal on questions of law from a judgment of the Municipal Court of Cleveland. A motion to quash service upon third-party defendants was sustained, and the petition of defendant-third-party plaintiff was dismissed.

For the sake of clarity and simplicity the defendant-third-party plaintiff, The Illes Construction Company, shall be referred to as Illes and the third-party defendants, Paul Fruscello and Fruscello Builders, as the Fruscellos.

In November 1963, the homeowners, and original plaintiffs herein, filed this action in Cleveland Municipal Court against a general contractor, Illes, alleging that said company had breached its warranty in the construction of plaintiff's house, resulting in subsequent fire damage (November 29, 1959) to the premises located in Chesterland, Geauga County, Ohio, in the amount of $5,200.

On June 11, 1968, R. C. 2309.71, Ohio's Third-Party Practice Statute became effective. On the following day, June 12, 1968, defendant-third-party plaintiff appellant, Illes, in accordance with the statutory provisions, filed a motion for leave to file a third-party petition against the subcontractor, Paul Fruscello, individually, and Paul Fruscello Builders, Inc., both of whom Illes charges as being persons "who * * * [are] * * * or may be liable to * * * [them] * * * for all or part of the plaintiff's claim against * * * [them] * * *," according to R. C. 2309.71. The facts indicate that these third-party defendants, Fruscellos, had performed the masonry and brick work on the fireplace and chimney within the house of the original plaintiffs, which, as contended by Illes, was the proximate cause of the fire and damage in suit.

After having obtained leave from the Cleveland Municipal Court, defendant-appellant filed its third-party petition against said Fruscellos. The third-party defendants,

---

*This opinion was prepared by Judge Artl and concurred in by Judges Day and Manos, but Judge Artl's death intervened before the decision was announced.

having been served with process through the mail, then responded on July 16, 1968, by filing a motion to quash service of summons and to dismiss the third-party petition. On January 2, 1969, the court granted the motion and dismissed the action as to them.

Following a motion to reconsider filed in the same court, and a resulting affirmance of the court's prior ruling of January 2, 1969, Illes, defendant-third-party plaintiff-appellant, filed its appeal to this court on March 28, 1969.

The basic issue before this court is simply whether the Cleveland Municipal Court committed prejudicial error in sustaining the motion of the third-party defendants to quash service of summons and in dismissing the third-party plaintiff's petition.

R. C. 2309.71, entitled "Third Party Practice," provides in relevant part:

"(A) At any time after commencement of an action a defendant, as a third-party plaintiff, may file a petition and cause a summons to be issued and served upon any person, including a co-defendant, who is or may be liable to him for all or part of the plaintiff's claim against him."

Prior to the effective date of the statute it is obvious that Illes was precluded from taking any action against the Fruscellos until such time as the plaintiffs' case against Illes had been concluded in favor of such plaintiffs. Illes now contends, however, that the present situation is precisely that anticipated by R. C. 2309.71, which has as its purpose the elimination of "circuity and multiplicity of actions." By way of reply, Fruscellos, although admitting the necessity and practicality of third-party practice generally, assert that R. C. 2309.71 is inapplicable.

The substance of this dispute is distilled by the arguments to three issues. First, does R. C. 2309.71 apply retroactively to a case which was *pending* at the time of its effectiveness? Second, does the Cleveland Municipal Court have jurisdiction of the subject of the action between Illes and the Fruscellos? Finally, does the Cleveland Municipal Court have jurisdiction over the person of the Fruscellos?

Retroactivity depends upon the answers to two questions. (1) Is the particular statute substantive or procedural in nature, and (2) is the legislation original as opposed to amendatory or repealing. The first question is subject to the generally accepted rule that substantive statutes (those affecting vested rights) cannot be applied retroactively, while the latter must be determined in the light of R. C. 1.20 which states:

"When a statute is repealed or amended, such repeal or amendment does not affect pending actions, prosecutions, or proceedings, civil or criminal. *When the repeal or amendment relates to the remedy, it does not affect pending actions, prosecutions, or proceedings, unless so expressed,* nor does any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act." (Emphasis added.)

With these factors in mind, we turn to *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70, involving the retroactivity of R. C. 2307.382 and 2307.383, the so-called "long-arm statutes." In that case, although defendant had moved to quash service on the ground that the cause of action arose *prior to the effective dates of the statutes,* and that service thereunder was therefore improper because of an alleged general policy against retroactivity, the Supreme Court of Ohio nevertheless upheld the Court of Appeals by deciding that the statutes were laws of a *remedial nature,* and, as such, *applicable to causes of action accrued, but not filed, before their effective dates.*

The syllabus of *Kilbreath* reads:

"1. Section 28, Article II of the Ohio Constitution prohibiting the passage of retroactive laws, has application to laws affecting substantive rights, and has no reference to laws of a remedial nature providing rules of practice, courses of procedure or methods of review. (Paragraph three of the syllabus of *State, ex rel. Slaughter,* v. *Indus. Comm.,* 132 Ohio St. 537, approved and followed.)

"2. Laws of a remedial nature providing rules of

practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws. (Paragraph one of the syllabus of *State, ex rel. Holdridge,* v. *Indus. Comm.,* 11 Ohio St. 2d 175, approved and followed. *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Hedges,* 63 Ohio St. 339, criticized.)

"3. Sections 2307.382 and 2307.383, Revised Code, which expand the personal jurisdiction of local courts, are laws of a remedial nature, and as such are applicable to causes of action accrued, but not filed, before their effective date, September 28, 1965."

At first glance, the meaning of *Kilbreath* appears to be that even if a remedial or procedural statute is "retroactive," such retroactivity does not concern lawsuits already filed. It must be noted, however, that the *Kilbreath case,* in fact, concerned a cause of action which had accrued but was not filed at the time the statute was passed. Furthermore, nowhere in this case is the proposition advanced that *original* remedial statutes *cannot* apply to actions which are pending. This is hardly surprising since the very nature of a long-arm statute would create a situation quite different from that produced by a third-party practice statute. At the effective date of the latter, for example, *pending* cases would naturally be of concern, while at the initiation of the former the opposite would be true.

Stated another way, without the long-arm statutes the pertinent category of lawsuits would never be filed. On the other hand, third-party practice deals specifically with cases already filed, since third-party petitions must necessarily be based upon a prior suit. This distinction is extremely important if we are to avoid the fatal mistake of concluding that *Kilbreath* prohibits an original remedial statute from affecting causes of action which have been filed.

At any rate, Section 28, Article II of the Ohio Constitution, which prohibits the passage of retroactice laws, was discussed in *Kilbreath* at page 72, reiterating the importance of preliminarily determining whether a statute is remedial or substantive.

"It is apparent from the cases, however, that this language refers to laws affecting substantive rights, *and has no reference to laws of a remedial nature providing rules of practice, courses of procedure, or methods of review.* State, ex rel. Slaughter, v. Indus. Comm., 132 Ohio St. 537. Laws of a remedial nature are applicable to any proceedings conducted after the adoption of such laws. *Smith* v. *New York Central Rd. Co.,* 122 Ohio St. 45; *State, ex rel. Holdridge* v. *Indus. Comm.,* 11 Ohio St. 2d 175; *Elder* v. *Shoffstall,* 90 Ohio St. 265." (Emphasis added.)

As further defined by the Supreme Court at page 72, "substantive law is that which creates duties, rights and obligations, while procedural or remedial law prescribes the methods of enforcement of rights or obtaining redress" (citing *State, ex rel. Holdridge,* v. *Indus. Comm.,* 11 Ohio St. 2d 175, 178). Even a cursory look at R. C. 2309.71 reveals that the question of liability or amount of damage is *not* involved. Only "time" becomes a factor. Certainly, as in the instant matter, "time of suit" between defendant-third-party plaintiff and third-party defendant will be accelerated. Those, however, who would not be legally responsible under prior laws will not be *liable* under R. C. 2309.71 either. The expense and inconvenience encountered by third-party defendants (which otherwise would only be postponed) when measured against the elimination of circuity and multiplicity of actions, becomes truly inconsequential. Needless to say, if third-party defendants had a "vested right" to delay defending an action lawfully initiated, then "substantive law" would be involved and retroactivity would be prohibited. Such is not the case here. By comparison and analogy the same type of reasoning supporting the retroactive effect of the long-arm statutes in *Kilbreath* applies here. At pages 72 and 73 in the *Kilbreath* opinion, it was pointed out that "new wrongs" were *not* created by long-arm statutes, but rather, the court said: "* * * they merely let local courts reach farther for personal jurisdiction over those who have committed *established wrongs.* If appellant's actions gave rise to a cause of action, they did so *at the time they*

*were done,* and the only immunity that appellant could possibly have relied upon was that he was outside the jurisdiction of local courts. This kind of reliance does not seem worthy of judicial protection.'' (Emphasis added.) Similarly, the appellees in the instant case cannot claim a ''foul'' simply because they are lawfully called upon to defend earlier than anticipated.

Having indicated that R. C. 2309.71 is plainly remedial, the next issue is whether said statute is ''original'' legislation as opposed to an amendment of some law already in existence, and whether such distinction has any legal import in this case. As previously pointed out, this determination becomes important when considering the significance of R. C. 1.20 which apparently prohibits any repealing or amending statute from being retroactive unless such intent is specifically expressed in the statute itself.

In the instant case, retroactive intent is not expressed, and although R. C. 2309.71 is certainly original legislation, it must be agreed that *if* R. C. 1.20 nevertheless controls, the third-party statute cannot be retroactive.

The court, in *Kilbreath,* however, spoke to this very distinction when, at page 73, it said:

''By its own terms and by case law this statute *applies only to amendments and repeals. Gulf Refining Co.* v. *Evatt,* 148 Ohio St. 228; *Wheeling & Lake Erie Rd. Co.* v. *Toledo Ry. & Terminal Co.,* 72 Ohio St. 368. But see *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Hedges,* 63 Ohio St. 339.'' (Emphasis added.)

In *Bagsarian* v. *Parker Metal Co.* (N. D. Ohio 1968), 282 F. Supp. 766, which likewise involved Ohio's long-arm statute, it was conceded that R. C. 1.20, dealing with ''amendments and repeals,'' has nothing to do with ''original'' statutes, and therefore the latter type of legislation must be construed according to general common law principles which provide an exception to the rule that statutes should be given only a prospective effect. (282 F. Supp. 766, 770; 82 Corpus Juris Secundum, Statutes, Section 414.) This exception relates to statutes affecting *remedy* or *pro-*

*cedure* and applies to any causes of action accrued before the effective date of the law, *including cases which are already pending at that time.* (82 Corpus Juris Secundum, Statutes, Section 421.)

"A statute which *expedites litigation* should be made to apply to pending proceedings." (Emphasis added.) 82 Corpus Juris Secundum, Statutes, Section 422. The whole purpose of third-party practice is precisely such expeditiousness. See, also, 82 Corpus Juris Secundum, Statutes, Section 424, which states:

"A statute determining who may be proper parties to actions, especially when the actions are of a remedial nature, will be applied to actions accrued, or pending at the time of its passage." (Emphasis added.)

The court in *Bagsarian* was in full agreement with the proposition that Ohio follows the "remedial exception" to the application of such statutes as evidenced by its repudiation, at page 770, of the following dictum in *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Hedges* (1900), 63 Ohio St. 339. "* * * The policy of our law * * * forbids giving to a statute retroactive effect, though remedial in character, unless the act contains an express provision to that effect" (citing also, *Elder* v. *Shoffstall* (1914), 90 Ohio St. 265; *Smith* v. *N. Y. C. Rd. Co.* (1930), 122 Ohio St. 45; *State, ex rel. Holdridge,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 175).

In *Holdridge*, paragraph one of the syllabus states:

"1. Laws of a remedial nature providing rules of practice, courses of procedure, or methods of review *are applicable to any proceedings conducted after the adoption of such laws.*" (Emphasis added.)

This was a workmen's compensation case involving a relator who was totally blind and thus entitled to permanent and total disability payments. Although the relator's award was given in 1947 under a statute stating that loss of both eyes shall "prima facie constitute total and permanent disability," this part of the statute was deemed to be only *procedural* and could not support the Industrial Commission's 1964 termination of relator's payment (be-

cause of rehabilitation and subsequent employment) in the face of a 1959 amended re-enactment of the same statute which provided that loss of both eyes would constitute total and permanent disability. The statute also stipulated that it apply to pending cases. The Court concluded that the removal of the former prima facie proof factor was only procedural. This legt the relator, subsequent to this 1959 amended re-enactment, with an unconditional right to receive compensation until his death.

Applying this reasoning to the instant case, the conclusion necessitated is that the third-party plaintiff's petition properly initiates the impleader of third-party defendants Fruscellos since the filing thereof occurred after the effective date of the Third-Party-Practice Statute—such activity being clearly permissible as coming within the proper bounds of proceedings conducted after the adoption of the remedial or procedural law. The only difference between *Holdridge* and the instant case is that in the latter, R. C. 1.20, requiring a specific statutory expression of retroactivity if it is to be applied to pending cases, *need not be complied with because R. C. 2309.71 is strictly "original" legislation.* See, also, *Smith* v. *New York Central Rd. Co., supra.*

The Supreme Court of Illinois has stated the rationale for our conclusion here very well. In *Nelson* v. *Miller* (1957), 11 Ill. 2d 378, 382, 143 N. E. 2d 673, 675-676, interpreting the significance of the 1955 amendments to that state's Civil Practice Act authorizing entry of judgments *in personam* on personal service of summons outside the state in cases already pending, the court stated:

"Insofar as the claim is grounded in Illinois law it is fully disposed of by our recent decision in *Ogdon* v. *Gianakos* (1953), 415 Ill. 591, 597, 114 N. E. 2d 686, 690, where we said: 'The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes

---

[1] A conclusion that the procedural aspect of the statute was dispositive of retroactivity is weakened considerably by the specific stipulation that it apply to pending cases.

will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, *nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not* * * *. *Chicago & Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579, 61 N. E. 658; *Peoples Store of Roseland* v. *McKibbin,* 379 Ill. 148, 39 N. E. 2d 995; *Board of Education* v. *City of Chicago,* 402 Ill. 291, 83 N. E. 2d 714. [This] * * * merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure.' See also *Orlicki* v. *McCarthy* (1954), 4 Ill. 2d 342, 347-48, 122 N. E. 2d 513, 515-516." (Emphasis added.)

Therefore, in the absence of any Ohio law which would prohibit an *original,* remedial or procedural statute from being applied retroactively to pending cases, and, further, there being no valid reason for delaying the beneficial effect of a statute which attempts to alleviate multiplicity of suits, it is finally concluded that R. C. 2309.71 should be applied in the instant case, provided, of course, that the provisions of said statute are properly followed.

The second major issue, then, involves the *jurisdiction* of the Cleveland Municipal Court in deciding the third-party claim of Illes against the Fruscellos. It does not appear that either the Fruscellos or the cause of action against them, if brought other than by a third-party petition, would be within the Municipal Court's jurisdiction. The cause of action is one of implied warranty and the breach thereof no doubt occurred outside the city of Cleveland. Also, neither Paul Fruscello, individually, nor Paul Fruscello Builders, Inc., *resides* or *exists* within the territory of said municipality. Therefore, had Illes attempted to

bring an original suit against the Fruscellos in Cleveland Municipal Court without the aid of R. C. 2309.71 it certainly would have failed.

The present impleader statute, however, requires a different result. Drawing an analogy to the Federal Rules of Civil Procedure, Rule 14, which is nearly identical to R. C. 2309.71, we see that the true purpose of third-party practice statutes becomes clear. The reduction of multiplicity of suits becomes paramount. *Dery* v. *Wyer* (C. C. A. 2, 1959), 265 F. 2d 804, *Thomas* v. *Malco Refineries, Inc.* (C. C. A. 10, 1954), 214 F. 2d 884. To facilitate this end, certain jurisdictional factors must therefore be considered when determining the propriety of a claim of third-party plaintiffs against third-party defendants.

As succinctly stated in 2 Kooman, Fed. Civ. Prac. 240-241, Third-Party Practice, Section 14.10:

"It is now firmly established that, where there is a valid * * * jurisdictional basis for the main action between the plaintiff and defendant, the defendant may implead a third person *who is or may be liable to him* for all or part of the original plaintiff's claim and no new and independent ground of * * * jurisdiction need exist as between the original defendant and the third-party defendant. *In such cases the third-party claim is considered as ancillary to the main claim and supported by the same jurisdictional basis as the main claim.* * * * The conclusive test of whether a third-party claim is ancillary is whether the third-party defendant is or may be liable to the defendant (third-party plaintiff) for all or part of any recovery by the original plaintiff against the original defendant (third-party plaintiff)." (Emphasis added.)

The facts of the instant case present a situation which is firmly within the confines of the above rule. First, original plaintiffs sue defendant-contractor, Illes, located within Cleveland, in the Cleveland Municipal Court which obviously has jurisdiction over the dispute. Second, jurisdiction having been established, Illes files a third-party plaintiff petition stating in effect that it has a right of indemnification from the Fruscellos who were the subcon-

tractors and the alleged cause of plaintiffs' damages, which right it intends to enforce presently by use of a third-party pleading.

It is clear that the third-party claim is ancillary to the main claim and supported by the same jurisdictional basis.

Although the above matter refers to Federal Civil Rule 14, the purpose of R. C. 2309.71 is virtually identical and no valid reason presently appears for not applying the same principle to impleader practice in Ohio.

Such reasoning comports with the rule that impleader statutes are liberally construed to effectuate their purpose, which is to save time, prevent duplication of evidence, avoid circuity of action, and settle all related matters in one proceeding. *Noland Co.* v. *Graver Tank & Mfg. Co.* (C. C. A. 4, 1962), 301 F. 2d 43; *Blair* v. *Cleveland Twist Drill Co.* (C. C. A. 7, 1952), 197 F. 2d 842.

However, it is not the purpose of third-party practice to transcend the jurisdictional limits of the particular court where it is employed. For example, the Cleveland Municipal Court could not determine a probate matter since such a suit would be beyond its jurisdiction, irrespective of the fact that such suit is ancillary to one properly before that court.

Therefore, R. C. 2309.71 must be viewed in conjunction with the trial court's ordinary jurisdiction before final approval can be made.

R. C. 1901.18 posits jurisdiction in Cleveland Municipal Court, in two particulars relevant here: "In any action or proceeding at law for the recovery of money * * * of which the Court of Common Pleas has jurisdiction"; and "in any action at law based on contract * * *." Whichever basis is relied upon, the claim of Illes against the Fruscellos is certainly *that type of case ordinarily considered by the Cleveland Municipal Court* and not beyond its jurisdictional power.

This court having now concluded that the Court has jurisdiction over the subject matter and that such was a proper place to bring suit and reach an utimate determina-

tion of all matters involved, the last remaining issue is whether proper service of process was made upon third-party defendants.

R. C. 1901.23 provides:

"Writs and process in a municipal court shall be served, returned, and publication made in the manner provided for service, return, and publication of summons, writs, and process in the court of common pleas.

"In any civil action or proceeding at law in which the subject matter of the action or proceeding is located within the territory or a defendant resides or is served with summons within said territory, *the court may issue summons * * * to the bailiff for service in the county * * * in which the court is situated * * *.*" (Emphasis added.)

The "subject matter of the action" between Illes and the Fruscellos is certainly "located within the territory" of Cleveland Municipal Court by way of ancillary jurisdiction. And, since third-party defendants, Fruscellos, *are* within the same county as the City of Cleveland, R. C. 1901.23 is the vehicle for service.[2] Still another statute provides the mode.

R. C. 2703.23, "Service of writs and process by registered mail; return of officer," was the very mode employed by Illes. Note the wording of this section.

"In addition to the methods of service and return of writs provided by law * * * the judge of the municipal court of any city may, *by rule, provide for the service of writs or process by mail, registered or otherwise * * *.*" (Emphasis added.)

Such mail service procedure has long been authorized by the Cleveland Municipal Court as evidenced by Rule 7 of that court's procedural rules.

The formalities of such mail service having been complied with, proper service upon both third-party defendants was accomplished. We conclude, therefore, that the Cleveland Municipal Court had proper jurisdiction over the subject matter of the third-party dispute by virtue of

---

[2]This case arose before the adoption of the new Ohio Rules of Civil Procedure, effective July 1, 1970.

R. C. 2309.71 and also had personal jurisdiction over, and proper service upon, the aforementioned third-party defendants under R. C. 1901.23 and R. C. 2703.23, coupled with R. C. 2309.71. In quashing service of process and dismissing the third-party suit, the trial court was in error. The judgment is reversed as contrary to law and the cause is remanded to the Cleveland Municipal Court for further proceedings according to law.

*Judgment reversed and remanded.*

DAY and MANOS, JJ., concur.